BROTHERTOWN REALTY CORPORATION, Appellant, vs.
REEDAL and another, Respondents.

*October 8, 1929—February 4, 1930.*

466

For the appellant there were briefs by *Bundy, Beach & Holland* of Eau Claire and *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *C. B. Bird.*

*W. K. Parkinson* of Phillips, for the respondents.

The following opinion was filed November 5, 1929:

CROWNHART, J.    It is conceded that this case presents a judicial question, and the question whether title to the land has passed from the government must be determined by federal law.  *Mendota Club v. Anderson,* 101 Wis. 479, 489, 78 N. W. 185; *Wilcox v. Jackson,* 13 Pet. 498, 517.

The question here resolves itself into whether we shall say, following federal decisions, that the error of the original survey was so gross as to be considered a constructive fraud upon the government.  There is no dispute as to the facts.  The original survey was in error; that is conceded.

Nor is there any question but the defendant Reedal bought the property in good faith, relying on the original plat and believing the lot was bounded on the west by the lake.

There is a wealth of cases decided by the United States supreme court involving the same or kindred principles and facts as here involved. *Producers Oil Co. v. Hanzen,* 238 U. S. 325, 35 Sup. Ct. 755; *Jeems Bayou F. & H. Club v. U. S.* 260 U. S. 561, 43 Sup. Ct. 205; *U. S. v. Lane,* 260 U. S. 662, 43 Sup. Ct. 236, and cases cited. The rule adduced from such decisions is that where the original survey line departs so far from the true meander line of a body of water as to leave so large a tract of land unsurveyed as to clearly indicate that the meander line was in fact never run, then the survey will be held invalid as a constructive fraud upon the government. The decisions recognize the difficulties of making accurate surveys in meandering a body of water under the conditions attendant in the early surveys. They do not therefore require absolute accuracy, but instead, a reasonable approximation of the shore line. But if the departure from the shore line is so great that a court must say as a fact that the survey was never in fact made, then a resurvey actually running the meander lines approximately at the shore will be upheld. *U. S. v. Lane,* 260 U. S. 662, 43 Sup. Ct. 236.

Testing this case by such rules, we find that in the original survey the meander line followed the sinuosities of the shore of Lake Pickerel with reasonable accuracy, up to the south line of said lot 4, where, without any apparent reason, it angled easterly until, at the north line of lot 4, it departed from the shore some sixty rods, thereby leaving unsurveyed between the lake and the meander line 19.37 acres of land, making lot 4, extended to the lake shore, include 45.57 acres instead of 26.20 acres, as indicated on the survey. The meander line then continued northeasterly and northerly until it again reached the shore, leaving altogether in one body of timbered upland, 103.28 acres unsurveyed,

and the meander line as indicated departing from the shore as much as 180 rods.

An examination of the federal decisions discloses no survey excluding so large a body of contiguous upland therefrom that has been upheld as a reasonable approximation of an accurate survey.

We are urged to consider the survey as affecting only lot 4, and to hold that the unsurveyed parcel is not so great as to fall within the condemnation of the courts. But that seems impossible in view of the fact that the meander line is continuous over this single piece of upland of 103.28 acres unsurveyed. It is impossible to believe that the surveyor in fact made any attempt to actually run the meander line as reported by him. It is probable that, by reason of storm or darkness, he continued his meander lines on a point upon his map where he had surveyed before, without any examination of the land or shore line. However, whatever reason might be given, the fact remains that the original survey as platted, which left out of consideration 103.28 acres in a contiguous tract of high land, which for some distance ran back from the lake shore 160 to 180 rods, cannot be said to have been an actual survey, and it constituted a constructive fraud upon the government. The result is unfortunate for the defendants, who became purchasers in good faith, but the facts and the law are too plain to admit of any other determination.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment establishing title to said lot 17 in the resurvey in the appellant.

A motion for a rehearing was denied, with $25 costs, on February 4, 1930.