**UNITED STATES of America, Plaintiff,**

**v.**

**Paul T. WALTON and Helen E. Walton, his wife, Walter W. Jordan, Executor of the Estate of Helen Leaf Hancock, Deceased, and the Prudential Insurance Company of America, Defendants.**

Civ. No. 4973.

United States District Court
D. Wyoming.

April 5, 1967.

Robert N. Chaffin, U. S. Atty. for the District of Wyoming, and William Redmond, Solicitor, Dept. of the Interior, for plaintiff.

James R. Learned, Cody, Wyo., A. G. McClintock, Cheyenne, Wyo., and Donald H. Albrecht, Los Angeles, Cal., for defendants Paul T. Walton and Helen E. Walton.

KERR, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above entitled matter having come on regularly for hearing before this Court, and the Court having heard the evidence and examined the exhibits offered for and on behalf of the parties, took said matter under advisement; and having examined the briefs submitted by counsel for the plaintiff and for the defendants, and having studied the authorities relied on by the parties, and being fully advised in the premises, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. The land involved in this action was a part of the Oregon Territory acquired by the United States in 1848.

2. This is an action by the United States of America to quiet title to certain unsurveyed lands situated on the east, or left, bank of the Snake River in Township 41 North, Range 117 West, 6th P.M. Wyoming, in Teton County, Wyoming.

3. Defendants Paul T. Walton and Helen E. Walton are the equitable owners and are entitled to possession of Lots 1 and 2 in Section 24, and Lots 5, 6, and 7 in Section 13, Township 41 North, Range 117 West, 6th P.M. Wyoming, by reason of a sales contract dated August 30, 1958 entered into between said defendants and Helen Leaf Hancock, now deceased. Defendant Walter W. Jordan, Executor of the Estate of Helen Leaf Hancock, deceased, represents the sellers under said contract of sale. The deed for said lots has been placed in escrow to be delivered to Paul T. Walton and Helen E. Walton upon payment of the final installment of the purchase price. The Prudential Insurance Company of America is a mortgagee of the lots.

4. The premises on which the government seeks to enter and to which it seeks to quiet title comprise 323.59 acres of land lying between the thread of the main channel of the Snake River and the meander line bordering Lots 5, 6, and 7 in Section 13, Township 41 North, Range 117 West, and Lots 1 and 2 in Section 24, Township 41 North, Range 117 West.

5. The government claims that through fraud or gross error, said 323.59 acres were not surveyed, and that said unsurveyed lands are part of the public domain to which the government is entitled to a decree quieting its title.

6. The defendants claim riparian title to said 323.59 unsurveyed acres in Sections 13 and 24. They base their right to said acres on the ground that the

meander lines established by the Owen and Voigt surveys and existing on the official government plats of Township 41 North, Range 117 West, are boundary lines of the sinuosities of the river.

7. The following sketch in Figure 1 shows the situation of the property as delineated on the plats of the government surveys made in 1893 and in 1918:

VOIGT SURVEY 1918
All 3 lots Patented 8/28/25
5   9.00 acres
6   28.21 acres
7   29.86 acres
1   15.43 acres
    Patent 10/27/16
2   29.05 acres
    Patent 10/23/07
OWEN SURVEY 1893

Sec. 14
Sec. 13
BURNHAM SURVEY 1902
Sec. 23
Sec. 24
SNAKE RIVER
Section 26
Section 25

TOWNSHIP 41 NORTH, RANGE 117 WEST, 6th P.M. WYOMING

FIGURE 1.

8. The meander line along the east, or left, bank of the Snake River adjacent to Lots 1 and 2 in fractional Section 24, Township 41 North, Range 117 West, was duly surveyed by the government surveyor William O. Owen in July 1893, which survey was duly approved August 16, 1894, and filed September 25, 1894. The meander line along the east, or left, bank of the Snake River adjacent to Lots 5, 6, and 7 in fractional Section 13, Township 41 North, Range 117 West, was duly surveyed by the government surveyor Hans C. Voigt in September 1918, which

survey was duly approved October 27, 1919, and accepted by the General Land Office March 29, 1920.

9. These fractional sections were designated on the plats by the surveys as Lots 1 and 2 in Section 24, Township 41 North, Range 117 West, containing 15.43 acres and 29.05 acres, respectively, and as Lots 5, 6 and 7 in Section 13, Township 41 North, Range 117 West, containing 9.00 acres, 28.21 acres, and 29.86 acres, respectively. Said acreage totals 111.55 acres.

10. Said lots aforesaid are represented by the plats as bounded on the north and west by the Snake River. It was the Snake River that interposed and made these Sections 13 and 24 fractional sections.

11. In 1907 the United States sold and conveyed by patent, the S½NE¼ of Section 24 to Otho E. Williams, which includes Lot 2 of said section. In 1916, Lot 1 of Section 24 was sold and patented to Charles H. Reed. Lots 5, 6, and 7 in Section 13 were patented to Frank R. Williams in 1925. The defendants are successors in interest to the patentees. By their sale contract dated August 30, 1958, Helen Leaf Hancock agreed to sell and defendant Paul T. Walton agreed to buy (among other lands) Lots 5, 6, and 7 in Section 13, and Lot 1 in Section 24, and all that part of Lot 2 in Section 24 lying North and East of a described line ending at the "old meander line along Snake River". Each patent conveyed land in addition to said lots; it did not, therefore, state the acreage of the lots but described the total land conveyed as containing a certain total acreage "according to the official plat of the survey". Said plats, as stated hereinabove, established that the east boundary of the Snake River is the west boundary of said lots.

12. In 1965, Jack A. Eaves and Vern E. Lane of the Bureau of Land Management, Cheyenne, Wyoming, were directed to re-establish the meander lines originally surveyed by Owen and Voigt through Township 41 North, Range 117 West. They re-established all the original meander lines surveyed by Owen and Voigt except that portion along the left bank adjacent to Section 13, and that portion adjacent to the north half of Section 24. They were prevented from re-establishing the meander line through Sections 13 and 24 by Paul T. Walton, one of the defendants herein, and the equitable owner of the lots in said Sections.

13. The terrain which is crossed by the meander line contains cottonwood trees, Engleman spruce of intermingled age groups and measurements, brush, small plant growth and grass. There is a tree 75 years old and another tree about 100 to 150 feet west of the meander line, which is estimated to be about 108 years old. Approximately half of the 323.59 acres of land which the government claims is covered by trees and other vegetation.

14. The soil which covers the portion of the unsurveyed land and on which plants and vegetation are supported is alluvial. It is soil which was deposited by slow-moving flood waters when the main channels overflowed. Such soil on the unsurveyed land averages up to two feet in depth covering the subsoil, sand and gravel.

15. Said trees and the soil supporting their root systems were in place prior to the time of the Owen and Voigt surveys, and other parts of the disputed area supporting similar growth was likewise in place many years prior to the original surveys.

16. By superimposing the meander lines established by the Owen and Voigt surveys on an aerial photograph of the area made in 1960, it is immediately apparent that the meander lines do not even superficially define the sinuosities of the main channel nor approach the line of mean high water.

17. The meander line as it appears on the official plats is not a true meander line of the Snake River as it crosses Sections 13 and 24, for the reason that there are unsurveyed lands between the river and the meander line, and said line traverses through timber land, over hills,

along the rim of a bench. The meander line changes in elevation from a level near that of the level of the Snake River to elevations as much as 140 feet above the level of the river.

18. The Snake River in this area is a swift-moving stream; it drops in elevation ten feet to the mile. In the bed of the main channel there are cobbles or water-washed stones and boulders, some of which are as large as eighteen inches in diameter.

19. The Snake River has a braided river channel pattern. It simultaneously occupies multiple channels. It separates and divides and reunites further down the stream course forming a braided appearance. The valley floor of the river is covered by evidences of channels, and numerous broad channels exist within the disputed area. The existence of numerous line braids in the area makes it difficult to distinguish between the braids and the bank of the river.

20. The first bridge crossing the Snake River in this area was built in 1915, three years prior to the Voigt survey and twenty-three years subsequent to the Owen survey. Said bridge was located approximately midway along the west side of the disputed lands that parallel the river. The bridge piers are visible and are still in existence, although the bridge has been removed. The main channel of the river presently flows between the bridge piers, and is in the same position now as it was at the time the bridge was built.

21. The main channel of the Snake River has not materially shifted or changed in relation to the disputed area since the original surveys, notwithstanding that some of the adjacent areas might have had small flowing channels through them at high water or might have been inundated at a floodstage of the river.

22. The Snake River is approximately 2,500 feet west of the meander corner common to Sections 13 and 24 which was originally established in 1893 by Owen, re-established in 1918 by Voigt, and re-established again in 1965 by Eaves. The land between the Snake River and the meander line is unsurveyed public domain.

23. The mechanics of the work of the Owen and Voigt surveys were well executed and were exceptionally good. There is no gross distortion in the Owen survey. Owen, however, erroneously omitted to survey the land adjacent to the Snake River, that is, the 323.59 acres between the Snake River and the meander line.

24. The subdivisions surveyed by Owen and Voigt, and the acreages they contain, and the acreages of the land between the meander line and the thread of the main channel of the Snake River, are summarized in the following table:

| DESCRIPTION | AREA | AREA OF ADJACENT OMITTED LAND |
|---|---|---|
| Section 13: | | |
| Lot 5 | 9.00 acres | 42.29 acres |
| Lot 6 | 28.21 acres | 48.96 acres |
| Lot 7 | 29.86 acres | 86.18 acres |
| Section 24: | | |
| Lot 1 | 15.43 acres | 71.83 acres |
| Lot 2 | 29.05 acres | 74.33 acres |
| TOTAL | 111.55 acres | 323.59 acres. |

25. Said table and the sketch in Figure 2 clearly demonstrate that the defendants are claiming from the unsurveyed lands more than three times the area of the land purchased by them, and said area so claimed is disproportionate to the lands purchased:

TOWNSHIP 41 NORTH, RANGE 117 WEST, 6th P.M. WYOMING.

Broken lines outline the unsurveyed land between the meander line and the bank of the Snake River, which land Plaintiff claims as public land, and Defendants claim as riparian owners.

FIGURE 2.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter of the action pursuant to the provisions of 28 U.S.C. Section 1345. This Court has jurisdiction of the parties, except as to the defendant Walter W. Jordan, Executor of the Estate of Helen Leaf Hancock, deceased, as to whom purported service of process has been quashed and no attempt has been made by the United States to effect proper service.

2. There was no fraud in the establishment by William O. Owen of the meander line adjacent to Lots 1 and 2 of Section 24, Township 41 North, Range 117 West, 6th P.M., Wyoming.

3. There was no fraud in the establishment by Hans D. Voigt of the meander line adjacent to Lots 5, 6, and 7 of Section 13, Township 41 North, Range 117 West, 6th P.M., Wyoming.

4. The purpose of meander lines is to define the sinuosities of the banks of the river in order to ascertain the quantity of the land in the fraction section which may be subject to sale and for which the buyer pays the purchase price.

5. The general rule is that the meander line is supposed to mark the shore line of the water and if it conforms to, and approaches the true shore line of the body of water, it does not constitute the boundary of the tract and the boundary of the grant is the actual water line.

6. The facts in this case, however, come within the exception to such general rule, namely, that the meander line will be treated as the true boundary of the tract where there was fraud or error in the survey, as a result of which there was in fact at the time of the survey a substantial amount of land between the survey line and the actual edge of the river.

7. There is a gross discrepancy between the meander line shown on the official plats of Township 41 North, Range 117 West, and the actual water line of the Snake River, and the area of land omitted from the survey is so great in comparison with the subdivision surveyed as to make it certain that the surveyors did not actually meander the water line.

8. The United States patented only the Lots 1 and 2 in Section 24, and Lots 5, 6, and 7 in Section 13, Township 41 North, Range 117 West, and the amount of the purchase price was fixed by the number of acres conveyed. The successors in interest to the patentees, the defendants herein, who bought and paid for 111.55 acres are not permitted to rely on the surveyors' errors to claim title to 323.59 additional acres for which they did not pay. An error on the part of the surveyors will not increase the number of acres offered for sale and sold by the government, and will not divest the United States of its title thereto.

9. When the surveys of 1893 and 1918 as shown on the official plats indicate that 111.55 acres were surveyed and designated Lots 5, 6, and 7 in Section 13, and Lots 1 and 2 in Section 24, it is conclusive evidence that said surveys did not intend to nor did they in fact embrace the 323.59 acres of land lying between the meander line and the thread of the main channel of the Snake River.

10. The unsurveyed 323.59 acres lying between the meander line and the thread of the main channel of the Snake River, which were erroneously omitted from the surveys of 1893 and 1918, are unsurveyed public lands which the government is entitled to survey and dispose of.

11. When the acreage of the lots is given on the official government plats as 111.55 acres it is obvious that patents were not intended to convey 435.14 acres.

12. The defendants Paul T. Walton and Helen E. Walton must be and are limited to the lots which are correctly described on the plats of the 1893 and 1918 surveys which the patentees actually bought and paid for. The

title of the defendants landowners therefore is limited to the 111.55 acres in Lots 5, 6, and 7, Section 13, and Lots 1 and 2, Section 24, all in Township 41 North, Range 117 West, as said lots are bounded by the meander line shown on the plats.

13. The facts and circumstances of this case conclusively show that the edge of the Snake River did not exist at or near the place indicated by the meander line on the plat; that the land omitted from the survey is not subject to riparian rights of the owners abutting the meander line; that the 323.59 acres of unsurveyed land claimed by defendants are excessive, unusually large, and substantially more than the 111.55 acres which they bought and paid for; and the patents given according to the surveys did not convey title to the water's edge but only to the meander line laid out on the plat.

14. A distance of approximately 2500 feet between the Snake River and the meander line, together with all the facts and circumstances of this case adverted to herein, are sufficient to show the gross error of the surveys of Owen and Voigt in 1893 and 1918, and justify the conclusion by this Court that the making of a meander line has no certain significance and that in this case its immediate import was to indicate the west boundary line of Lots 5, 6, and 7, Section 13, and Lots 1 and 2, Section 24, Township 41 North, Range 117 West, beyond which line the defendants are not entitled to assert any title.

15. Judgment should be entered in favor of plaintiff and against defendants, and title to the unsurveyed 323.59 acres between the thread of the main channel of the Snake River and the meander line adjacent to Lots 5, 6, and 7 in Section 13 and to Lots 1 and 2 in Section 24, Township 41 North, Range 117 West, 6th P.M., Wyoming, is quieted in the United States of America.

16. Judgment will be entered accordingly.