**Burt A. WACKERLI et al., Plaintiffs,**

**v.**

**Rogers C. B. MORTON et al., Defendants.**

**Civ. No. 1–66–92.**

United States District Court, D. Idaho.

Feb. 28, 1975.

T. H. Eberle and Dale G. Higer, Eberle, Berlin, Kading, Turnbow & Gillespie, Chartered, Boise, Idaho, for plaintiffs.

U. S. Atty. Sidney Smith, Asst. U. S. Attys. Mikel H. Williams and Dan Dennis, Boise, Idaho, for defendants.

## MEMORANDUM DECISION

McNICHOLS, Chief Judge.

This case was tried at Pocatello, Idaho, by the Court, sitting without a jury. Plaintiffs were represented by T. H.

Eberle and Dale G. Higer of the law firm of Eberle, Berlin, Kading, Turnbow & Gillespie, Chartered, of Boise, Idaho; defendants were represented by Mikel H. Williams and Dan Dennis, Assistant United States Attorneys, of Boise, Idaho. Oral and documentary evidence was admitted and post trial briefs, keyed to a reporter's transcript, were filed and considered. Each party has presented proposed Findings of Fact and Conclusions of Law. The cause stands submitted. The Court being thus fully advised enters this Memorandum Decision.

The action involves a dispute over title to certain real property located along the Snake River adjacent to the City of Idaho Falls, Idaho. Plaintiffs are land owners claiming rights to the disputed lands as successors in interest to an original patentee. The defendants are officers of the United States, their successors, and the United States, claiming that the realty involved was not conveyed by the patent, but that it constitutes lands erroneously or fraudulently omitted from a government survey and that the title remains in the United States.

The Complaint was initially filed in 1966 and was met with a defense of sovereign immunity. Much delay ensued during which settlement negotiations were conducted and congressional relief explored. In 1972 Congress enacted a statutory provision which has been codified as 28 U.S.C. § 2409a permitting the United States to be named as a party defendant in a civil action to adjudicate disputed title to real property in which the United States claims an interest. Subsequent to the effective date of § 2409a, plaintiffs amended their Complaint to bring the action within the purview of that statute. Under 28 U.S.C. § 1346(f), this Court has undisputed jurisdiction of the instant action.

■ Defendants affirmatively alleged that the twelve-year statute of limitations established by 28 U.S.C. § 2409a(f) was a bar to plaintiffs' cause of action. The facts disclose, and I find, that none of the plaintiffs knew, or should have known of the government's claim prior to calendar 1962. The Complaint was amended in accordance with § 2409a in March 1973, well within twelve years. Apparently the defendants agree, as no mention was made of the statute of limitations in the post trial brief of the defendants, nor in the proposed Findings of Fact and Conclusions of Law filed on behalf of the United States.

Our saga had its origin in a contract awarded in April 1877 to one John B. David, an experienced land surveyor. David contracted with the United States to survey the exterior boundaries of six townships and the subdivision lines of three of those townships, including Township 2 North, Range 37 East, Boise Meridian, in the Territory of Idaho. (This was prior to Idaho's being admitted to the Union.) Further, David was to meander both sides of water courses such as the Snake River. All work was to be done in accordance with the Manual of Instructions to Surveyors General, 1871 Edition. Under these instructions the surveyor was required to survey township and section lines and at points where either line intersected the bank of the Snake River to establish meander corners. He was then to meander the banks of the river by taking the courses and distances of the sinuosities of the river bank so that the meander line would be accurately reflected. Special instructions provided that no lands need be surveyed except those adapted to agriculture without artificial irrigation, irrigable lands or such as could be redeemed and for which there was sufficient water for reclamation and cultivation of the same, and timber or coal lands. Special instructions were to be considered in conjunction with the general instructions of the Manual and in case of conflict the Manual of Instruction was to control.

In accordance with the contract, David purported to meander the portion of the Snake River where the land in dispute is located on September 20 and 21, 1877. The field notes and the survey plat de-

scribed the west boundary of Lot 4, Section 12 and Lots 1, 2 & 3, Section 13, Township 2 North, Range 37 East, Boise Meridian, as the meander line of the Snake River. On February 5, 1878, the plat of said Township 2, based on David's field notes, was filed in the United States Land Office, Boise City, Idaho Territory, and became the official plat of the area. On April 19, 1888, the United States patented, to one William Damme, Lot 4 of Section 12 and Lots 1, 2 and 3 of said Section 13 of Township 2 North, Range 37 East, Boise Meridian. The west boundary was shown as bordering on the Snake River and called for a total of 89.52 acres.

The realty involved in this litigation is located along the Snake River on the west boundary of Lots 1, 2 & 3 of the said Section 13. The disputed land comprises 29.68 acres. The chain of title from the patentee Damme to the plaintiffs is not contested.

In 1922 the United States, through a party headed by Robert Farmer, a cadestral engineer for the Bureau of Land Management, made an investigation of the meander lines of the Snake River, including the lines established by David in 1877 in Township 2 North, Range 37 East, Boise Meridian. Farmer concluded and reported that the David Survey in the area here in dispute was fraudulent and that there existed areas of omitted lands. As a result, the Surveyor General of Idaho recommended a resurvey be made. In 1923 the General Land Office, Department of Interior, disapproved the recommendation. The disapproval recited, among other things, that even if fraud be proved, the value of the public land involved would be small. It was recognized that practically all of the alleged omitted lands had passed into private ownership and that the apparent owners of the land on both sides of the river were claiming and using the lands to the banks of the river.

The foregoing remained the official position of the United States until April 1961, at which time the Bureau of Land Management ordered an investigation and conditional survey of lands purportedly omitted from the 1877 Survey. Among the lands to be investigated was Township 2 North, Range 37 East, Boise Meridian. This investigation and survey, known as the Walter Good Survey, indicated that there were areas of land bordering the Snake River, lying within the meander lines of the David 1877 Survey. These lands were determined by the Bureau of Land Management to be omitted from the David Survey by grossly erroneous or fictitious meandering by David. The United States thereupon took the position that such lands remained unsurveyed lands of the United States subject to disposal under the public laws of the United States. Among the areas claimed by the defendant to have been so omitted was a tract of 49.90 acres bordering the river and opposite Lots 4 of Section 12 and Lots 1, 2 & 3 of Section 13 as called for in the patent to Damme. Of this area, 29.68 acres are here in dispute. The land lies between Lots 1, 2 & 3 of Section 13 and the Snake River as presently shown by the Good plat which was made the official plat by acceptance and filing on October 13, 1966.

Plaintiffs attempted unsuccessfully to attack, administratively, the effectiveness of the Good Survey. Upon final adverse government action and the acceptance and filing of the Good plat, this litigation commenced.

Fortunately for the Court the controlling law seems well established. Indeed, the parties each rely on and elicit comfort from the identical leading cases in point.

 Normally meander lines of a navigable river such as the Snake River in the locale involved are not run as boundaries. Such meander lines are intended to define the sinuosity of the water course. The stream itself then becomes the boundary. When the United States conveys to a patentee (or other title recipient) a tract of land described in accordance with an official plat,

where the plat shows the property as bordering on a navigable stream, the patentee takes title to the bank of the stream or the mean high water line. Factually we have that situation here, and in the ordinary course these 29.68 acres of land in contest would be held to be a part of Lots 1, 2 & 3 of Section 13 under the patentee Damme, and title would have passed, through a series of mesne conveyances, to plaintiffs herein. In this regard the plaintiffs presented a prima facie case for having title quieted in themselves.

■ There are, however, some exceptions to the rule that the river establishes the boundary of the patented land. Since it is clear that the water course, the Snake River, was in place near the surveyed land at issue and that the surveyor, David, intended that the meander line and the bank of the stream would be considered as the land boundary, we have only to consider the exception to the rule which arises when the quantity of land found to have existed at the time of survey between the bank of the river and the meander line as established is of sufficient proportion to support a finding of a gross and palpable error amounting to fraud on the government.

■ Plaintiffs urge that the evidence preponderates against a finding of gross error while defendants contend that the proof clearly reflects a gross and palpable error amounting to fraud.

I am convinced by a full consideration of all of the evidence that the Survey of David insofar as the placement of the meander lines along the west boundary of Lots 1, 2 & 3 in Section 13 was erroneous. The bank of the Snake River on the left or east side was, in 1877, more nearly where located by the current plat made by the Good Survey. No witness testified that the river bank was, in 1877, at the place where David showed it to be by his meander lines. The expert surveyor witness for the plaintiffs conceded that the David meander line was not along the river bank. The evidence clearly shows that in a number of other areas David's meander lines were erroneously established. Oddly enough, the great bulk of David's Survey proved to be very accurate. His township and interior lines closed well within present tolerances. At points where section lines met the river the position of the meander corners demonstrated remarkable accuracy.

It is therefore established by the evidence that, in 1877, a small tract of land lying between the true river bank and the meander line, established by David on the west side of Lots 1, 2 & 3 in Section 13, was erroneously omitted. The patent to Damme calls for an acreage of 67.78 acres in total in the three lots. The tract of land so omitted contains, as shown by the Good Survey, 29.68 acres of land which suggests a comparison error in the order of 43%.

The omitted tract represents a roughly triangular piece of land running about 3,900 feet north and south and being at its greatest depth, some 750 feet. Along a large portion of the tract the depth of the divergence between the present high water line of the river and the David meander line ranges from 0 to 200 feet. The variances are demonstrated by the following comparisons. The patented area of Lot 1 of Section 13 is 44.24 acres with alleged adjacent omitted area of 20.9 acres; the patented area of Lot 2 is 20.7 acres with an alleged adjacent omitted area of 8.3 acres; while the patented area of Lot 3 is 3.84 acres with an alleged adjacent omitted area of .35 acres. Respectively, the ratio of survey to omitted land is approximately 2.1 to 1; 2.5 to 1, and 11.0 to 1. A portion of the land is low lying and was subject to some flooding in 1877. Since that time dams have been built and the flood stages of the river more regulated. As a result, some area has been added to the area of the disputed lands by accretion caused by lower water flows. A portion of the land now in the disputed area has been subject to artificial filling along the river bank to pro-

vide a road. This filling has tended to enlarge the area as presently constituted.

■ Such lands as are exposed after survey by receding water levels and such lands as are added by filling subsequent to survey are not, of course, erroneously omitted lands.

It is therefore obvious that the area of the erroneously omitted land, in place in 1877, is less than the 29.68 acres claimed by the defendants. How much less cannot be determined precisely from the evidence in the record. It would seem, however, that the record would support a finding of actual omitted area of between twenty and twenty-five acres, or a comparison error in the order of at least 30% with a ratio of surveyed to omitted lands similar to 2.5 to 1.

The proof concerning the character and terrain of the omitted land as it appeared in 1877 is of necessity less than certain. The surveyors' field notes describe some of the area in the general vicinity as being rolling and level and of good quality soil. No one finds fault with this generalization. However, such is obviously not descriptive of all of the disputed area. It is certain that a portion of the omitted land was made up of a rocky prominance, obviously unsuited for agricultural purposes. The evidence is persuasive that other portions of the omitted tract were subject to periodic flooding and likewise not of agricultural value. No doubt some of the area in dispute had agricultural potential.

From the evidence, a fair inference can be drawn that, in 1877, the lands involved did not appear to have much potential utility or value. In this regard it is interesting to note that as late as 1922, some forty years later, the Department of Interior, being advised of the apparent numerous discrepancies in the David Survey, felt the value of such lands was insufficient to justify the expense of a resurvey.

■ Based on the relatively small area of the omitted lands, the character and terrain of the same, and the mini-

mal value thereof, I find and conclude that no gross error is demonstrated sufficient to constitute fraud on the United States. This being true, I find that plaintiffs' lands, as granted under the patent to Damme, were bordered on the west by the bank (mean high water line) of the Snake River, and that the tract of land lying between the meander lines as established by the David Survey and the Snake River opposite Lots 1, 2 & 3 of Section 13, aforesaid, were included in that patent.

It follows that title to the disputed lands must be quieted in the plaintiffs.

■ Plaintiffs have affirmatively alleged the defenses of estoppel and laches. In view of the determination made by the Court, these issues need not be decided. Suffice to say, as I apprehend the state of the law today, the equitable defenses of laches and estoppel will not lie as to the United States of America. I reject the contention made by the plaintiffs that Congress intended by the enactment of 28 U.S.C. § 2409a to expose the government to the doctrines of estoppel and laches. However, if plaintiffs be correct in their view, and if either laches or estoppel can be raised in a quiet title suit against the United States, either by way of § 2409a or otherwise, the factual elements required to sustain these equitable remedies are amply present in this case.

The foregoing Memorandum Decision is intended to constitute Findings of Fact and Conclusions of Law as authorized by Rule 52(a), Federal Rules of Civil Procedure. I add the following formal Findings of Fact and Conclusions of Law to furnish the additional technical basis for a complete judgment quieting title to the disputed property.

ADDITIONAL FINDINGS OF FACT

I.

On April 19, 1888, a patent was issued by the United States to William Damme which included fractional Lots 1, 2 & 3 of the disputed area pursuant to the Act of Congress of May 20, 1862, under

Homestead Certificate No. 621, Register of the Land Office at Blackfoot, Territory of Idaho. The west side of said lots borders on the east bank of the Snake River as disclosed by the meander line appearing on the official plat. Plaintiffs, through their predecessors in interest, claim title to portions of said lots and omitted land derived by mesne conveyance from said patentee Damme, plaintiffs' property being more particularly described as:

Lot 22, Block 40; Block 41; Lots 1–7, 20 and 38, Block 42; Lots 45 through 48, Block 43; Lots 1–4, 7, 8, 31–34, 41–48, Block 65; Lots 1–4, 10, 11, 22–30, 39–42, Block 66; Lots 1–25, Block 67; Block 68; Block 69; Lots 9–12, Block 70; Lots 1–7, 25–46, Block 71, all in Highlands Addition to the original town of Eagle Rock, now the City of Idaho Falls, according to the official plat thereof on file, Bonneville County, State of Idaho, all located in the East Half of Section 13, Township 2 North, Range 37 East, B. M., Bonneville County, Idaho.

II.

The following individual plaintiffs together with their spouses named above, or plaintiff entities, are the owners of or mortgagees of property set opposite the names as the owners or mortgagees at the time of the commencement of the action or of the addition of said person to the action as a party plaintiff, except names shown in parentheses are grantees since said party was added to the Complaint:

| HIGHLAND PARK ADDITION | OWNER | MORTGAGEE |
|---|---|---|
| (Each * below references exact description where a portion of a lot is involved.) | | |
| Block 40: | | |
| Lot 22 | Fred W. Keefer | |
| Block 41: | | |
| All | Fred W. Keefer | |
| Block 42: | | |
| Parts of Lots 1–5 * 1 | State of Idaho | |
| Lots 6 & 7 | Leitha Kemmis | |
| Lot 20 | Fred W. Keefer | |
| Lot 38 | Fred W. Keefer | |
| Block 43: | | |
| Lots 45–48 | Harold and Edna Southwick | |
| Block 65: | | |
| Lots 1–4 | Robert E. and Mary T. Embleton (John Foster) | Utah Mortgage Loan |
| Lots 7 & 8 | D. F. Maurer | |
| Lots 31 & 32 | Burt A. and Lueva G. Wackerli | |
| Lots 33 & 34 | Rex Lords and Doris M. Lords or Walter Struhs and Donna M. Struhs | |
| Lots 41–44 | Melvin L. Smith and Phyllis E. Smith | |
| Lots 45–48 | Robert E. Gray and Olive G. Gray | |

Note: See Appendix "A" for * 1 thru * 7

| HIGHLAND PARK ADDITION | OWNER | MORTGAGEE |
|---|---|---|
| Block 66: | | |
| Lots 1–4 | Mr. & Mrs. J. L. Wiersten | |
| Lots 10 & 11 | Frank Keefer | |
| Lots 22–24 | B. & R. Building Co., Inc. | |
| Parts of Lots 25 & 26 * 2 | State of Idaho | |
| Balance of Lots 25 & 26, Lots 27–30 | Mr. & Mrs. Richard I. Clayton | |
| Lots 39–42 | Alton C. Kartchner & Irene B. Kartchner | |
| Block 67: | | |
| Lots 1 & 2 | Willard I. Cranney & Helen H. Cranney | First Federal Savings & Loan |
| Part of Lots 7 & 8 * 3 | State of Idaho | |
| Lots 3–6 & Balance of Lots 7 & 8 | A. R. Henderson | |
| Parts of Lots 9–11 * 4 & Lots 12–14 | State of Idaho | |
| Parts of Lots 15, 16, 22 & 23 * 5 & Lots 17–21 | State of Idaho | |
| Parts of Lots 24 & 25 * 6 | State of Idaho | |
| Block 68: | | |
| All | Fred W. Keefer | |
| Block 69: | | |
| South portion * 7 | State of Idaho | |
| Balance of Block | Fred W. Keefer | |
| Block 70: | | |
| Lots 9 & 12 | Jack Hurley & Velma H. Hurley | Western Life Insurance Co. |
| Block 71: | | |
| Lots 1–4 | M. R. Skelton & Hazel R. Skelton (T. Ross Clements) | |
| Lots 5–7 | Mr. & Mrs. William Simpson | |
| Lots 25–29 | J. Edwin Stobel & Shawna Stobel or Charles R. Jachetta & Virginia Jachetta | Bank of Idaho |
| Lots 30–33 | Bert Rowe & Irene Rowe | First Security Bank |
| Lots 34–37 | Albert W. Breiter & Ennid S. Breiter | Occidental Life |
| Lots 38–41 | Norman G. Jones & Florence Jones | First Security Bank |
| Lots 42–46 | D. L. Westergard & Dorothy W. Westergard | First Security Bank |

NOTE: See Appendix "A" for * 1 thru * 7

### III.

Plaintiffs and their predecessors in interest have paid all taxes and assessments levied and payable on their respective properties at all times material hereto.

### IV.

Plaintiffs and their predecessors in interest have been in possession of their respective properties at all times. The United States of America has not been in possession.

## CONCLUSIONS OF LAW

### I.

At all times material herein at the commencement of this action on October 28, 1966, each of the plaintiffs were owners in fee simple, or as to the mortgagee plaintiffs held a mortgage upon said title, and each of the individual owners were in possession of the property listed for each in Finding of Fact II. Each plaintiff or his successors in interest have owned the property listed in Finding of Fact II at all times thereafter. The defendants at no time were in possession.

### II.

The title of plaintiffs to their property, as listed in Findings of Fact II, was derived by plaintiffs and their predecessors in title through mesne conveyances from the patentee William Damme, which title included fractional Lots 1, 2 & 3 in the East Half of said Section 13 and the land that existed between said fractional lots and the water of the Snake River in 1877.

### III.

The defendants, their servants, agents, employees and representatives should be enjoined from interfering with the property rights of the plaintiffs in and to the property set forth in Finding of Fact II.

### IV.

Judgment should be entered in favor of the plaintiffs and against the defendants quieting title to the property set forth in Finding No. II to the respective owners thereof, free and clear of all claims by the defendants, their heirs, successors or assigns.

### V.

No costs should be allowed.

### VI.

Judgment will be entered accordingly.

## APPENDIX "A"

1. Beginning at the Southeast corner of Block 42 of said Highland Park Addition to the Original Town of Eagle Rock, now the City of Idaho Falls, Idaho; thence Westerly along the South line of Lot 1 of said Block 42 a distance of 125.0 feet to the Southwest corner of said Lot 1; thence Northerly along the West line of said Lot 1 a distance of 14.52 feet; thence North 50°26′20″ East, 162.25 feet to a point in the East line of said Block 42; thence Southerly along said East line 117.96 feet to the Place of Beginning.

2. Beginning at the Northwest corner of Lot 25, Block 66 of said Highland Park Addition to the Original Town of Eagle Rock, now the City of Idaho Falls, Idaho; thence Easterly along the North line of said Lot 25 a distance of 38.65 feet; thence South 50°26′20″ West, 50.17 feet to a point in the West line of Lot 26, of said Block 66; thence Northerly along the West line of said Lots 26 and 25 a distance of 31.98 feet to the Place of Beginning.

3. Beginning at the Northwest corner of Lot 8, Block 67, of said Highland Park Addition to the Original Town of Eagle Rock, now the City of Idaho Falls, Idaho; thence Easterly along the North line of said Lot 8 a distance of 42.39 feet to a point in a line parallel with and 100.00 feet Southeasterly from the cen-

ter line of said U. S. Highway 191, Project No. F–6471(17) Highway Survey; thence South 50°26′20″ West along said parallel line 55.02 feet to a point in the West line of Lot 7 of said Block 67; thence Northerly along the West line of Lots 7 and 8 of said Block 67, a distance of 35.08 feet to the Place of Beginning.

4. Beginning at the Southwest corner of Lot 9 of Block 67 of said Highland Park Addition to the Original Town of Eagle Rock, now the City of Idaho Falls, Idaho; thence Northerly along the West line of Lots 9 through 14 of said Block 67, a distance of 150.0 feet to the Northwest corner of Lot 14 of said Block 67; thence Easterly along the North line of said Lot 14 a distance of 125.0 feet to the Northeast corner of said Lot 14; thence Southerly along the East line of Lots 14, 13, 12 and 11 of said Block 67, a distance of 81.64 feet; thence South 50°26′20″ West, 107.23 feet to a point in the South line of said Lot 9; thence Westerly along said South line 42.39 feet to the Place of Beginning.

5. Beginning at the Northeast corner of Lot 15 in Block 67 of said Highland Park Addition to the Original Town of Eagle Rock, now the City of Idaho Falls, Idaho; thence Southerly along the Easterly line of Lots 15 through 22 of said Block 67 a distance of 198.32 feet to a point in a line parallel with and 100.0 feet Southeasterly from the center line of said U. S. Highway 191, Project No. F–6471(17) Highway Survey; thence South 50°26′20″ West along said parallel line, 41.85 feet to a point in the South line of Lot 23 of said Block 67; thence Westerly along said South line, 92.76 feet to the Southwest corner of said Lot 23; thence Northerly along the West line of Lots 23 through 16 of said Block 67 a distance of 182.83 feet to a point in a line parallel with and 100.0 feet Northwesterly from the center line of said Highway Survey; thence North 50°26′20″ East along said last parallel line, 66.13 feet to a point in the North line of Lot 15 in said Block 67; thence Easterly along said North line 74.05 feet to the Place of Beginning.

6. Beginning at the Northwest corner of Lot 24, Block 67 of said Highland Park Addition to the City of Idaho Falls, Idaho; thence Easterly along the North line of said Lot 24 a distance of 92.76 feet to a point in a line parallel with and 100.0 feet Southeasterly from the center line of said U. S. Highway 191, Project No. F–6471(17) Highway Survey; thence South 50°26′20″ West along said parallel line 60.93 feet to a point in the Southwesterly line of said Block 67; thence Northwesterly along said Southwesterly line a distance of 56.97 feet to the Southwesterly corner of said Block 67; thence Northerly along the West line of said Block 67 a distance of 5.0 feet to the Place of Beginning.

7. Beginning at the most Southerly corner of Block 69 of said Highland Park Addition to the Original Town of Eagle Rock, now the City of Idaho Falls, Idaho; thence Northwesterly along the Southwesterly line of said Block 69 a distance of 74.49 feet to a point in a line parallel with and 100.0 feet Northwesterly from the center line of U. S. Highway 191, Project No. F–6471(17) Highway Survey; thence North 50°26′20″ East, along said parallel line, 77.77 feet to a point in the Easterly line of said Block 69; thence Southerly along said Easterly line 93.85 feet to the Place of Beginning.