Donald H. ALBRECHT and Rivermea-
dows Corporation, a Wyoming
corporation, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. C74–113.

United States District Court,
D. Wyoming.

Nov. 20, 1981.

James R. Learned, Cheyenne, Wyo., Kenneth C. Bornholdt, Los Angeles, Cal., Joseph P. McMahon, Jr., Denver, Colo., Raphael J. Moses, Boulder, Colo., for plaintiffs.

John E. Linskold, Staff Atty., U. S. Dept. of Justice, Denver, Colo., Charles E. Graves, Cheyenne, Wyo., for defendant.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

KERR, Senior District Judge.

The above-entitled matter coming on regularly for hearing before the Court, plaintiffs appearing by and through their attor-

neys, James R. Learned, Kenneth C. Bornholdt, Joseph P. McMahon, Jr. and Raphael J. Moses, and defendants appearing by and through its attorneys, John E. Linskold and Charles E. Graves, and the Court having heard the evidence adduced for and on behalf of the plaintiffs, and the evidence offered for and on behalf of the defendant, and having taken said matter under advisement, and having carefully considered the pleadings, testimony and exhibits relevant and material to the matters in dispute, and the memoranda submitted by counsel in support of their respective theories of the case, and the Court being fully advised in the premises makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Plaintiffs Donald H. Albrecht (Albrecht) and Rivermeadows Corporation (Rivermeadows) commenced this quiet title action against the United States pursuant to 28 U.S.C. § 2409a. The lands in dispute are located within sections 3, 10, 24 and 15 of T.40N., R.117W. and section 34 of T.41N., R.117W. along the Snake River in Teton County, Wyoming:

2. Rivermeadows is a Wyoming corporation and Albrecht is the president and sole stockholder of the company.

3. Albrecht claims title to the lands in dispute by virtue of his ownership of certain lands contiguous to the disputed lands. Ownership of the lands was acquired through mesne conveyances of the original patents issued by the United States.

4. Patent 485990, issued on August 6, 1915, included the SW ¼ NW ¼, the W ½ and lot 4 of section 10, T.40N., R.117W. Said lots cover 171.25 acres. The disputed land in question under the patent and mesne conveyances is an island comprising 8.84 acres.

5. Patent 492414, issued on October 4, 1915, included lots 1, 2, 3, and 4 of section 3, T.40N., R.117W. Said lots cover 113.85 acres. The disputed land in question under the patent and mesne conveyances comprises 203 acres.

6. Patent 675162, issued on April 24, 1919, included lots 2 and 3, the SW ¼ NE ¼ and the NE ¼ SE ¼ of section 15, T.40N., R.117W. Said lots cover 155.88 acres. There appears to be no disputed land contiguous to this area.

7. Patent 1038106, issued on June 12, 1930, included lot 4 of section 14, T.40N., R.117W. Said lot covers 17.14 acres. The disputed land in question under the patent and mesne conveyances is an island comprising 5.17 acres.

8. Patent 339780, issued on June 7, 1913, included lot 1 of section 4, T.40N., R.117W., and the S ½ SE ¼ and the SE ¼ SW ¼ of section 34, T.41N., R.117W. Said lots cover 157.87 acres. The disputed land in question under the patent and mesne conveyances comprises 48 acres.

9. The land to which Albrecht seeks to quiet title is comprised of 265.01 acres lying between the meander line of an early government survey and the thread of the main channel of the Snake River.

10. The government claims that the 265.01 acres were unsurveyed due to gross error and that such unsurveyed lands are part of the public domain.

11. The disputed lands are allegedly part of the Crescent H and Riverview ranches which are owned and operated by Albrecht. The two ranches cover approximately 3,000 acres of land located in several sections of Townships 40 and 41 North in Teton County, Wyoming.

12. Albrecht claims title to the disputed lands based upon riparian rights and the meander lines of surveyor Newell A. Burnham (Burnham). Burnham was employed by the United States as a surveyor in 1901. Among the lands that Burnham was to survey were lands bordering on the Snake River. Albrecht bases his right to the disputed lands on the ground that the meander lines of the Burnham survey followed the banks of the Snake River.

13. Burnham was required to survey and note islands in the river in addition to setting meander corners and meandering the banks of the river. Official plats were prepared from Burnham's survey and were accepted by the General Land Office on August 27, 1903.

14. The Snake River is a braided, gravel stream with numerous individual channels separated by timbered islands and willow-covered sand and gravel bars.

15. In his survey in this area, Burnham mistakenly meandered the bank of Fish Creek rather than the right, or west, bank of the Snake River and the disputed lands in question in this case were omitted from the survey. Burnham's field notes reflect his observation that he could not sight across the river because of "willows on sand bars."

16. The evidence established the existence of a peninsula in this area bordered on one side by Fish Creek and on the other side by the Snake River. The peninsula appears to have run the length of sections 3 and 4. The mouth of Fish Creek has changed location since the 1902 survey. The peninsula has been divided into several islands by the erosive force of the river.

17. The unsurveyed land between the meander line and the bank of the river is covered with vegetation, brush and trees. Many of the trees are cottonwoods, although other varieties are also found in the area. The ages of the trees vary considerably, with a large number of trees predating the Burnham survey.

18. With the enactment of the Taylor Grazing Act in 1934 several ranchers filed applications with the government for grazing leases on lands located between the meander line and the river. One of the applications was filed in 1956 by R. Bruce Porter (Porter). A lease was issued to Porter and said lease is still in existence today.

19. The Porter grazing lease covers approximately 160 acres in the NE ¼ of section 3, T.40N., R.117W. The entire 160 acres described in the Porter lease are part of the 203 acres of disputed land claimed by Albrecht in section 3.

20. The Court finds that there was gross error in the Burnham survey with respect to the omitted lands.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(f).

2. There was no fraud in the Burnham survey in this area. There is error between Burnham's meander line and the actual water line of the Snake River. *United States v. Walton*, 266 F.Supp. 257 (D.C. Wyo.1967), aff'd 415 F.2d 121 (10th Cir. 1969).

3. In a public grant nothing passes by implication and, unless the grant is clear and explicit regarding the property conveyed, a construction will be adopted which favors the sovereign rather than the grantee. *Walton*, supra.

4. The lands in question are omitted lands. This is clearly shown by the large discrepancy between the meander line and the bank of the river entailing approximately 265.01 acres. The lands belong to the government to survey and dispose of as it pleases.

5. Meander lines are surveyed to determine the sinuosities of a river. Generally, the meander should conform to, and mark, the shore line of the water. If it does so the meander line itself does not constitute the boundary of the land, rather the actual water line becomes the boundary. *Walton*, supra.

6. An exception to the general rule exists if there was fraud or error in the survey. *Walton*, supra.

7. Although the patents in this case convey 615.99 acres and the claimed land is 265.01 acres, the substantial area test still applies. When the figure showing the location of the disputed lands is considered, the picture changes. (See figure 1 attached.)

Most of the disputed lands are claimed from the ownership of lands located in the upper ranch. The patented acreage in that area is 261.72. The claimed acreage is 251. *Horne v. Smith*, 159 U.S. 40, 15 S.Ct. 988, 40 L.Ed. 68 (1894); *Security Land and Exploration Company v. Burns*, 193 U.S. 167, 24 S.Ct. 425, 48 L.Ed. 662 (1904); *United States v. Lane*, 260 U.S. 662, 43 S.Ct. 236, 67 L.Ed. 448 (1923); *Walton*, supra.

■ 8. The facts and circumstances of this case conclusively show that the edge of the Snake River did not exist at or near the place indicated by the meander line of the plat. The land omitted from the Burnham survey is not subject to any riparian rights of Albrecht. The patents issued in accordance with the survey did not convey the title to the land reaching to the water's edge.

Judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

ALBRECHT LANDS:
LOT 2, SECTION 34
LOTS 1,2,3,4 SECTION 3
LOT 4, SECTION 10
LOTS 1,2,3 SECTION 15
LOT 4, SECTION 14

—— OMITTED LANDS