## JEEMS BAYOU FISHING & HUNTING CLUB ET AL. v. UNITED STATES.

## UNITED STATES v. JEEMS BAYOU HUNTING & FISHING CLUB ET AL.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

Nos. 119 and 137. Argued November 21, 22, 1922.—Decided January 2, 1923.

1. The rule that where lands are patented according to an official plat, showing meander lines along or near the margin of a body of water, the plat is to be treated as part of the conveyance and the water itself constitutes the boundary, does not apply when it is conclusively shown that no body of water exists or existed at or near the place indicated or where no attempt to survey tracts lying beyond the meander line was actually made. P. 564.

2. The United States can not be estopped to question the existence of a survey by statements made in correspondence by officials of the Land Department. P. 564.

3. Defendants who took possession of land in Louisiana and extracted oil, in good faith, under a patent which had long been erroneously treated by government officials as conveying the tract, are liable, as innocent trespassers, for the value of the oil after deducting the cost of drilling and operating the wells. P. 564. See *Mason* v. *United States, ante,* 545.

274 Fed. 18, affirmed.

APPEAL and cross appeal from a decree of the Circuit Court of Appeals affirming a decree of the District Court in a suit by the United States to quiet its title to a tract of public land, enjoin trespasses and secure an accounting for oil wrongfully extracted.

Mr. *Harry T. Klein* and Mr. *Hampden Story,* with whom Mr. *Elias Goldstein* and Mr. *H. C. Walker* were on the brief, for Jeems Bayou Fishing & Hunting Club et al.

45646°—23——36

*Mr. Assistant Attorney General Riter,* with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The United States brought suit in equity in the District Court of the United States for the Western District of Louisiana, against the defendants (appellants and cross appellees here) to have its title to 85.22 acres of land in the Parish of Caddo, Louisiana, confirmed, possession restored, assertion of claims thereto by defendants enjoined, and an accounting had for the value of oil removed therefrom by the defendants, or any of them.

That court, upon the report of a master, entered a decree for the plaintiff and awarded damages for the value of the oil removed, after deducting the cost of drilling and operating the wells by means of which the oil was recovered.

The case is here by appeal from the decree of the Circuit Court of Appeals, affirming that of the District Court. 274 Fed. 18.

The Fishing & Hunting Club claimed title through mesne conveyances from one Stephen D. Pitts, to whom a patent had been issued in 1860 for the southwest fractional quarter of Section 10, in Township twenty North, Range 16 West, " according to the official plat of the survey of said lands, returned to the General Land Office by the Surveyor General." The other defendants depend upon a lease from the Fishing & Hunting Club to the Producers Oil Company. The official plat referred to in the Pitts patent was the plat of a survey made by A. W. Warren, in 1839, and approved and filed in the General Land Office the same year. The fractional quarter section described contained about 48 acres, though the patent erroneously gave it as 23 acres. The land in question lies

west and south and immediately adjoining, but other lands still intervene between it and the permanent lake shore. According to the plat, the land so patented to Pitts borders upon Ferry Lake, or Jeems Bayou, a navigable body of water, and is shown on the plat as a small peninsula extending into the water and connected by a narrow neck with the mainland. The evidence, which is voluminous and substantially uncontroverted, makes it very clear that no such peninsula exists or existed at the time of the survey in 1839. On the contrary, a later survey, called an extension survey, made in 1916–1917, shows that a large compact body of upland, more than 500 acres in extent, which is, and in 1839 was, well timbered with a growth of pine, oak and other trees, lies between this suppositious peninsula and the shore line of the lake in every direction except for a short distance along the east boundary as delineated upon the plat. This body of land extends beyond the boundaries of Section 10 into the adjoining Sections 9, 15 and 16. Across the lands in controversy, which are included in the larger body just mentioned, the actual shore line of the lake is, and was in 1839, from a few hundred feet to three-quarters of a mile distant from the outside boundaries of the land patented to Pitts, as shown on the Warren plat.

The Warren field notes describe the peninsular shaped tract of land, not by lines purporting to meander the margin of any body of water but by courses and distances. There is nothing in the field notes to indicate a water boundary, unless as a matter of mere inference, which the most casual inspection of the locality would instantly dissipate. The inaccuracy of the plat is plainly apparent upon a like inspection. Why Warren made the survey and returned the plat as he did is a matter of speculation but the facts demonstrate that no survey of the large, compact body of land which includes the tract in controversy, was ever made. The circumstances, as well as the

extent and character of the lands, necessitate the conclusion that the omission was of deliberate purpose or the result of such gross and palpable error as to constitute in effect a fraud upon the Government.

The defendants rely upon the rule that where lands are patented according to an official plat of survey, showing meander lines along or near the margin of a body of water, the plat is to be treated as a part of the conveyance and the water itself constitutes the boundary. The rule is familiar and has received the approval of this Court many times. *Producers Oil Co.* v. *Hanzen,* 238 U. S. 325, 338, and cases cited. But it is not absolute, as this Court has also frequently decided. It will not be applied where, as here, the facts conclusively show that no body of water existed or exists at or near the place indicated on the plat or where, as here, there never was, in fact, an attempt to survey the land in controversy. *Security Land & Exploration Co.* v. *Burns,* 193 U. S. 167; *Lee Wilson & Co.* v. *United States,* 245 U. S. 24; *Producers Oil Co.* v. *Hanzen, supra; Horne* v. *Smith,* 159 U. S. 40; *French-Glenn Live Stock Co.* v. *Springer,* 185 U. S. 47; *Chapman & Dewey Lumber Co.* v. *St. Francis Levee District,* 232 U. S. 186.

But it is asserted that plaintiff is estopped from claiming title to the land because of certain correspondence with the Commissioner of the General Land Office, in 1897, wherein that officer said that there were no unsurveyed lands in the locality in question and because of an official letter from the Director of the Geological Survey to the same effect. It is clear, however, that the United States cannot be so estopped. *Lee Wilson & Co.* v. *United States, supra; Utah Power & Light Co.* v. *United States,* 243 U. S. 389, 408.

We think the measure of damages adopted by the courts below was correct. The defendants were in possession of the land and extracted the oil therefrom in good faith.

The land had been for many years treated by the officials of the Government as having been conveyed by the Pitts patent. The defendants were innocent trespassers within the rule laid down by this Court in *United States* v. *St. Anthony R. R. Co.,* 192 U. S. 524, 542. Moreover, the case is governed in this respect by the more liberal rule of the Louisiana Civil Code (Article 501), as interpreted by the decisions of the highest court of that State. *Mason* v. *United States, ante,* 545.

*The decree of the Circuit Court of Appeals is affirmed.*