**Paul T. WALTON and Helen E. Walton,
Appellants,**

v.

**UNITED STATES of America,
Appellee.**

**No. 9645.**

United States Court of Appeals
Tenth Circuit.

Sept. 3, 1969.

---

9. 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1948).

10. Dolack v. United States, 217 F.Supp. 617 (D.Hawaii 1963).

———————

James R. Learned, Cheyenne, Wyo., for appellants.

Frank B. Friedman, Dept. of Justice, Washington, D. C. (Clyde O. Martz, Asst. Atty. Gen., Washington, D. C., Robert N. Chaffin, U. S. Atty., Cheyenne, Wyo., and Edmund B. Clark, Dept. of Justice, Washington, D. C., on the brief), for appellee.

Robert A. Hufsmith, Jackson, Wyo., amicus curiae on behalf of Harry Barker, Jr., John E. P. Morgan, Jack Huyler, Orin Soest, Dave Evans, Cal Matthew, Rene Jourdan, Gene Jarvis, Rev. Barry Cox, Byron Jenkins, Robert M. Cannon and Dallas Klinger.

Before PHILLIPS, HILL and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

This is an appeal from a judgment quieting title in the United States to certain undescribed riparian fast land omitted from the original survey.

The issue presented on appeal is, between the equitable owner of the patented adjacent land and the United States, who owns the omitted lands?

The land in question lies between land admittedly owned by the appellants, described as Lots 5, 6 and 7, Section 13, and Lots 1 and 2, Section 24, Township 41 North, Range 117 West, 6th P.M., Wyoming, and the upper Snake River as it flows through the Wyoming area generally known as the Jackson Hole Country. A patent issued August 28, 1925 to appellants' predecessors in title describes "Lots five, six and seven of Section thirteen * * * containing [469.76 acres] according to the official plat of the survey of the said land." [1]

Another patent issued October 27, 1916 to appellants' predecessors in title describes "Lot one and the northeast quarter of the northeast quarter of Section twenty-four * * * containing [55.43] acres. U. S. Land Office, Filed Nov. 6, 1916, * * * according to the Official Plat of the Survey of the said land, returned to the General Land Office by the Surveyor General. * * * " [2]

The patent to Lot 2 issued October 23, 1907 described the land granted: "South half of the northeast quarter and the north half of the southeast quarter of Section twenty-four * * * Wyoming, containing [160] acres. * * * " [3]

On March 12, 1936, the following correction letter affecting Lot 2 was filed in the County Recorder's Office and is part of the record:

"Answering your letter of February 6, 1936, having reference to the Otho E. Williams entry in Sec. 24, T. 41 N., R. 117 W., 6th P.M., I have to advise you that the description and area given in the entry papers and patent are erroneous. The entry, on which Evanston homestead patent 1212 issued October 23, 1907, describes the land as the S½ NE¼, 160 acres. Only one plat is on file pertaining to this land, that of August 16, 1894. It shows the correct description of the land to Lots 2 and 3, SE¼ NE¼ and NE¼ SE¼ with an area of 148.71 acres, as stated in your letter /s/ Asst. Comm. General Land Office, Washington." [4]

Appellants herein are the owners of an equitable title in the property here involved by virtue of an agreement of sale dated August 30, 1958.

Lots 5, 6 and 7 and Lots 1 and 2 are adjacent to the river and are bounded

1. Abstract of Title, Plaintiff's Exhibit XIII, Record, p. 17.

2. Id. at p. 2.

3. Original record, p. 382.

4. Abstract of Title, Plaintiff's Exhibit XIII, Record, p. 6.

on the side adjacent to the river by a meander line. The meander line bounding Lots 5, 6 and 7 was initially located by the Voigt Survey in 1918. The meander line bounding Lots 1 and 2 was initially located by the Owen Survey in 1893. Plats of the original surveys are in the record and ascribe defined acreage to each of the five lots. The surveyor's notes for the 1893 survey reveal the difficulty in locating a true meander line to the river and confess the surveyor used his best judgment.

The patents from the United States referred to these surveys in which the exact acreage of the lots is defined. Where patented lands are designated by a phrase referring to the plats made from the surveys, the official plat becomes part of the instrument of conveyance.[5] The importance of patents as the highest evidence of title is well settled.[6]

In a public grant nothing passes by implication and, unless the grant is clear and explicit regarding the property conveyed, a construction will be adopted which favors the sovereign rather than the grantee.[7]

The trial court said:

"The United States patented only the Lots 1 and 2 in Section 24, and Lots 5, 6, and 7 in Section 13, Township 41 North, Range 117 West, and the amount of the purchase price was fixed by the number of acres conveyed. The successors in interest to the patentees, the defendants herein, who bought and paid for 111.55 acres are not permitted to rely on the surveyors' errors to claim title to 323.59 additional acres for which they did not pay. An error on the part of the surveyors will not increase the number of acres offered for sale and sold by the government, and will not divest the United States of its title thereto." [8]

In view of the preceding rules enunciated, we cannot disagree with this determination of the trial court.

Appellants contend that the trial court was misled by the foregoing principle and therefore did not consider appellants' theory, which seems to be that the meander lines established on the surveys were true meander lines of the banks of the river at the time of the respective surveys and, therefore, were not boundaries of the acreage granted. Thus, they argue, when the river changed course the effect of the riparian doctrine of ownership by reliction of a stream or river was to place ownership of the omitted land in their predecessors.

The trial court recognized the rule contended for in its conclusions of law.[9] The trial court also recognized the exception to the rule and in line with the exception, found a "gross discrepancy between the meander line shown on the official plats * * * and the actual water line * * * ." [10]

We have examined not only the abstract of the record but the entire record filed in this case in line with Fed. R.Civ.P. 52(a) and the teachings of this court in Albuquerque Grand Prod. Co. v. Amer. Emp. Ins. Co.[11]

The history of the high water course of the river during the Owen Survey 1893 and the Voigt Survey 1918 is thoroughly evidenced in the record. Government witnesses give plausible reasons why the bank of the river could.

5. Jefferis v. East Omaha Land Bank, 134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872 (1890); United States v. Otley, 127 F. 2d 988, 993 (9th Cir. 1942).

6. United States v. Stone, 69 U.S. (2 Wall.) 525, 17 L.Ed. 765 (1864).

7. McDonald v. United States, 119 F.2d 821 (9th Cir.), cert. granted, Great Northern Ry. Co. v. United States, 314 U.S. 596, 62 S.Ct. 69, 86 L.Ed. 480 (1941), modified, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836 (1942).

8. United States v. Walton, 266 F.Supp. 257, 264 (D.Wyo.1967).

9. Id. at 264, Conclusion No. 5.

10. Id., Conclusion No. 7.

11. 282 F.2d 218, 221 (10th Cir. 1960).

never have been at the described meander line. Appellants' witnesses equally affirm the possibility that the bank of the river during the surveys did follow the meander line.

Both sides agree that the main channel or course of the river at this time is removed from the meander line by a substantial distance, giving rise to an additional area of 323.59 acres of unsurveyed land between the lots described in this action and the meander line of the river.

■ In addition to the conflicting testimony of witnesses, the trial court examined aerial photographs of the area. Ordinary high water escarpments are visible from the photographed area. One of the findings indicates the trial court considered this evidence in connection with the expert and non-expert evidence of history of the area and from these made a determination. The trial court recognized the common law distinction between omitted land and accreted or relicted land and at the outset, upon conflicting evidence, determined that the land in question is omitted land. Thereafter the principles relating to omitted lands were applied. From an examination of the record as a whole, we cannot say this determination is clearly erroneous. The rule in Jeems Bayou Hunting & Fishing Club v. United States,[12] establishes the principle for omitted lands.

In addition to the foregoing, the trial court based its determination that the land in question was omitted land upon the "substantial area test." The facts upon which this determination was made are set out in detail at 266 F. Supp. 262.

Appellants challenge the existence of such a rule. It was recognized, however, in Horne v. Smith.[13] The follow-

ing language is later used by the Supreme Court:

"The patents mention the number of acres contained in each lot, and that number is stated in the eleventh finding of the trial judge, which is set forth in the foregoing statement of facts. The difference between the number of acres stated in the patents to be in each lot and the number now claimed by the plaintiff in error is very large, and is subsequently referred to herein. It seems plain that the intention was to convey no more than the number of acres actually surveyed and mentioned in the patents. In Ainsa v. United States [161 U.S. 208, 16 S.Ct. 544, 40 L.Ed. 673 (1896)], this is deemed to be a very important and sometimes a decisive fact."[14]

In United States v. Lane,[15] the Supreme Court considered the substantial area test in an instance where the ratio of surveyed land to omitted land was between 2:1 and 11:1. In this case the ratio is almost 1:3.

■ We, therefore, conclude the trial court should be affirmed.

■ A group of landowners in the area whose lands are similarly situated applied to the Chief Judge of this court and were granted permission to file an *amicus* brief. The main contention therein is that these landowners are necessary and proper parties to this action. As this is an action involving specifically described lands, the ownership of the lands is the question with which we must deal. The parties presenting the *amicus* brief do not claim an interest in or ownership of the specific property. Fed.R.Civ.P. 19 is explicit in its language which denies parties without claimed or apparent interest in the ownership of the subject

12. 260 U.S. 561, 43 S.Ct. 205, 67 L.Ed. 402 (1923).

13. 159 U.S. 40, 15 S.Ct. 988, 40 L.Ed. 68 (1894).

14. Security Land & Exploration Co. v. Burns, 193 U.S. 167, 180, 24 S.Ct. 425, 428, 48 L.Ed. 662 (1904).

15. 260 U.S. 662, 43 S.Ct. 236, 67 L.Ed. 448 (1923).

matter a status of necessary or proper party in the lawsuit.[16]

In view of the foregoing, the brief of *amicus curiae* was cumulative and although considered, presented nothing more than appellants' ample brief had given us.

Affirmed.

16. The arguments of other similarly situated landowners have been presented to the legislative bodies and special legislation for their relief enacted. *See* Act of May 29, 1920, 41 Stat. 630–631; Snake River Omitted Lands Act, May 31, 1962, 76 Stat. 89, P.L. 87–469, H.R. 9097, 87th Cong.2nd Sess. (Special legislation for the relief of certain landowners along the Snake River in Idaho); *See also* Color of Title Act, 45 Stat. 1069, 43 U.S.C. § 1068 et seq., 43 C.F.R. § 2214 et seq.