**SNAKE RIVER RANCH, a general partnership, Appellee,**

v.

**UNITED STATES of America, Appellant.**

No. 75–1702.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 18, 1976.

Decided Oct. 4, 1976.

Carl Strass, Atty., Dept. of Justice (Peter R. Taft, Asst. Atty. Gen., Clarence A. Brimmer, U. S. Atty., Tosh Suyematsu, Asst. U. S. Atty., Edmund B. Clark and John E. Lindskold, Attys., Dept. of Justice, Washington, D.C., with him on the brief), for appellant.

Clyde O. Martz, Davis, Graham & Stubbs, Denver, Colo. (James O. Wilson, Loomis, Lazear, Wilson & Pickett, Cheyenne, Wyo., and Howard L. Boigon, Denver, Colo., with him on the brief), for appellee.

Before SETH and HOLLOWAY, Circuit Judges, and STANLEY, Senior District Judge.*

SETH, Circuit Judge.

The plaintiff-appellee brought this suit to quiet title on fifty-five acres of land along the Snake River in Wyoming against the United States under 28 U.S.C. § 2409a. The trial court made findings of fact and conclusions of law, and entered judgment for the plaintiff. The United States has taken this appeal.

The plaintiff is a family partnership which has been in possession since 1929, and has made extensive improvements on the disputed lands. These lands lie between a meander line survey and the Snake River west bank. The lots having the meander lines were patented to plaintiff's predecessor in title by descriptions reciting the acreage in each lot, and conveyed "according to the Official Plat of the Survey of the said land." The township was surveyed in 1893 by William O. Owen under a contract with the government. He did the field work, made the field notes, and set the monuments. The plat itself was drawn by the Surveyor General's office from the field notes. It shows the lands to be bordered by the Snake River on the east side with the acreage computed at 254.29 acres.

The "cloud" on plaintiff's title which it sought to remove by this suit was created by the filing in 1974 of a resurvey plat covering the area in question showing the disputed lands to be omitted lands and so to have been omitted by the Owen survey. If they were so omitted, title to them would be in the United States.

The case was tried to the court. The government's expert testimony included that of two surveyors and a hydrologist who testified as to the nature of the disputed lands. The plaintiff presented a surveyor, an expert on forestry and tree science who described the kind and age of the trees in the disputed area from the tree cores and other data, and a geomorphologist who testified as to the general river conditions. The plaintiff also called a hydrologist who testified as to the characteristics and changes in the river. He also testified as to the soils in the disputed area and platted area. Thus all the issues were fully developed. Extensive testimony was received as to all the conditions in the area including the river, the soils, and the vegetation. The surveying details were thoroughly presented as well.

The trial judge made forty-seven detailed findings of fact, and also detailed conclusions of law. He entered judgment quieting title to the disputed area in the plaintiff. The United States on this appeal does not directly challenge the trial judge's findings, and instead asserts that the trial judge did not apply the correct definition of "mean high water," and this was a basic mistake which led to an erroneous end result. The United States also asserts that the trial judge erroneously placed a burden of proof on the government as to at least some issues. There is also a dispute as to the theory on which the case was tried.

■ To start with the basic doctrines, the authorities are clear that a patent which incorporates or refers to the official plat thereby incorporates it in the conveyance, and the descriptive material therein.

* United States Senior District Judge, of the District of Kansas, Sitting by Designation.

*Walton v. United States,* 415 F.2d 121 (10th Cir.). The plats so referred to in the patents here concerned show that the Snake River is the east boundary of the tracts. This is a natural boundary, and controls over a computation of acreage. *United States v. State Investment Co.,* 264 U.S. 206, 44 S.Ct. 289, 68 L.Ed. 639. These doctrines are not challenged by the appellant. It is also apparent from the decisions that when such a boundary is a nonnavigable stream, the patentee takes to the thread of the stream. Also under such circumstances, the doctrine of accretion applies. *Hughes v. Washington,* 389 U.S. 290, 88 S.Ct. 438, 19 L.Ed.2d 530; *Choctaw & Chickasaw Nations v. Cox,* 251 F.2d 733 (10th Cir.).

Under the practices followed by the then Surveyor General, and incorporated in his Manual directing the procedures for public land surveys, the surveyor in the field was to survey meander lines generally following the banks of a stream. Monuments are required to be set at the changes in the course of the meander line. This line so surveyed is not a boundary line, but is a record of the edges of the watercourse which is expected to change its position from time to time. It is at a place where the monuments may be expected to last. A survey of the thread of the stream would, of course, be wholly impractical and no monuments could be set, thus it is meandered. This line is also used to compute the acreage in the lots as it has the only courses and distances available.

■ If the Snake River was so meandered by the surveyor Owen, the plaintiff's title to the lands in question was properly quieted in it. On the other hand, if there was a large departure from the proper location for the meander line sufficient to show a gross mistake or fraud, then the meander line changes character and becomes a fixed boundary. This was found to be the situation in *Walton v. United States,* 415 F.2d 121 (10th Cir.), a case heard by the same trial judge, and which arose in the same general area as this case. The departure there was gross, and it was apparent that this surveyor had not in fact come close to

meandering the bank of the river. Thus there was a large acreage omitted between the meander line and the bank of the stream. Thus in the cited case, the meander line became the fixed boundary.

Other decided cases concern surveys which did not meander a watercourse at all. *Horne v. Smith,* 159 U.S. 40, 15 S.Ct. 988, 40 L.Ed. 68; *Niles v. Cedar Point Club,* 175 U.S. 300, 20 S.Ct. 124, 44 L.Ed. 171; *Producer's Oil Co. v. Hanzen,* 238 U.S. 325, 35 S.Ct. 755, 59 L.Ed. 1330, and *Jeems Bayou Fishing & Hunting Club v. United States,* 260 U.S. 561, 43 S.Ct. 205, 67 L.Ed. 402. These cases demonstrate that the error must be a gross one, and as an exception to the general doctrine, it must be applied only in exceptional cases. *See also United States v. Lane,* 260 U.S. 662, 43 S.Ct. 236, 67 L.Ed. 448.

■ The plaintiff here established in its case facts which were sufficient for the application of the general rule for a stream properly meandered. The trial court so found. There was no evidence sufficient to invoke an exception to the rule to create omitted lands. The government undertook to prove facts to support an exception, but wholly failed to do so.

The parties argue as to whether the case was tried on the gross error theory present in *Walton v. United States,* or on the theory that the surveyor meandered something other than the correct watercourse. *Niles v. Cedar Point Club,* 175 U.S. 300, 20 S.Ct. 124, 44 L.Ed. 171. However, the doctrines are certainly related in the gross error aspect at least, and we see no reason to develop any distinction. The question in any event has to get down to the proposition whether the right watercourse was meandered and whether the line properly followed the stream.

An examination of the transcript demonstrates that the findings of fact by the trial judge were supported by the evidence. The basic findings can be quoted in part and summarized. In Finding 35, the court found:

"That there is no credible evidence suggesting that the Owen meander line was not an accurate depiction of the west bank of the Snake River . . . "

The trial court found that the survey here had been carefully done and monuments set.

In Finding 36, the trial court said:

"That there is no credible evidence that the disputed lands were an island in 1893 at the time of the Owen survey. There is no vegetation or tree growth on the disputed lands indicating that any of said land has been in place longer than approximately 60 years."

The trial court also referred to the difference between the ages of the trees on the west of the meander line and those on the river side. The trial court's findings describe in detail the nature of the stream, the seasonal variations in flow, the bank erosion, the gravel and cobble deposits, and the flood years. The findings also describe the dykes and dams installed to in some way control the flow.

The findings recite facts which show that the meander line was properly and carefully run and monumented at this location although there were errors in other parts of the valley, as in the *Walton* case.

The evidence and the findings also demonstrate that there was accretion between the meander line and the thread of the stream following the Owen survey. It is thus apparent from the proof that the disputed lands did not exist at the time of the survey as they have been added by accretion. We find no room for application of the so-called *Basart* doctrine if it in fact exists. The time of the survey must control as conditions were then known. Thus the date of patent is not significant.

■ The United States argued on appeal that the trial court had made a mistake in its definition of the "banks" or of the "mean high water line." We find no such mistake evidenced in the record. The United States confuses the court's description of the great variations in volume of stream flow at different seasons and during different years. The trial court properly applied the accepted definitions relating to "mean high water" and the "banks."

As indicated above, the court found the stream had been properly meandered. Whether this is a finding or a conclusion, it is correct. This line was incorporated as a meander line in the official plats, with the Snake River as the boundary of the lots. The basic doctrines apply and the court was correct in quieting title in the plaintiff.

AFFIRMED.