**PUEBLO OF TAOS, Plaintiff,**

v.

**Cecil D. ANDRUS et al., Defendants.**

**Civ. A. No. 79–0072.**

United States District Court,
District of Columbia.

July 18, 1979.

Peter T. Grossi, Jr., Washington, D. C., for plaintiff.

Peter D. Coppelman, Atty., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

GASCH, District Judge.

Plaintiff Pueblo of Taos brings this action for declaratory and injunctive relief seeking the government's acknowledgment of the correct boundary between government land held in trust for the Pueblo and government land administered by the United States Forest Service of the Department of Agriculture. Before the Court are defendants' motion to dismiss for lack of subject matter jurisdiction, plaintiff's motion for summary judgment, and defendants' cross-motion for summary judgment. At issue is an area of land near Taos, New Mexico, comprising 300 acres and including a lake called Bear Lake. Plaintiff claims to be the beneficiary of a corrected survey ordered by defendant Andrus which would place this Bear Lake region within the boundaries of land acquired by the Department of the Interior for the benefit of plaintiff Pueblo. The Forest Service claims to administer the Bear Lake region as part of the Carson National Forest, adjacent to the Pueblo's land. Defendant Bergland, when apprised of defendant Andrus' order, requested the opinion of defendant Bell in his position as Attorney General. Defendant Bell subsequently released his opinion on the matter, stating that in his view the Bear Lake region was properly under the administration of the Forest Service. Plaintiff then brought this action against the officials mentioned above, asking the Court to require defendant Andrus to formally issue the corrected survey, to declare the corrected boundary to be the true boundary, and to enjoin defendants Bergland and Bell from taking action inconsistent with the corrected boundary.

## BACKGROUND

There is no dispute about the material facts in this action. In 1716, the King of Spain made a royal grant of approximately 60,000 acres to one Antonio Martinez. On December 10, 1892, the United States Court of Private Land Claims confirmed title to the grant in Martinez' heirs, successors, and assigns. The court decree defined the eastern boundary of the grant as "the current of [the] Rio Lucero to its source," and ordered a survey to be made of that boundary. The Department of the Interior therefore issued a contract in 1893 to one John Walker, directing him to survey the boundaries of the Martinez grant according to the terms of the court decree. The northeast corner of the grant was described as the source of the Rio Lucero, and lay in mountainous and rugged terrain. Walker was operating under a tight deadline with a large area to survey. Upon completion, the plat of Walker's survey was approved by the court, and attached to the patent issued in 1896.

Pursuant to congressional mandate in the 1930's,[1] Taos Pueblo received an allocation of funds to restore lost lands. Taos Pueblo requested the Department of the Interior to purchase the unoccupied eastern portion of the Martinez grant. The Department decided to condemn that land for the Pueblo's benefit, divided into Tracts A and B, and Tract C in the east. In November, 1939, the Department filed a condemnation action against the Watson Land Company, the successor to the Martinez grantees. On August 29, 1941, the district court granted the condemnation petition, and incorporated Walker's plat. The decree calculated the acreage by referring to Walker's eastern meander line, and noted that the "true East boundary" of the grant was the "middle of the stream known as Rio Lucero." There are no physical monuments marking the meander line in the northeastern most por-

1. 43 Stat. 636 (1924); 48 Stat. 108 (1933).

tion of the tract, and Geological Survey maps characterize the boundary as "indefinite."

In 1945, the Geological Survey prepared a map of the area which placed the eastern boundary of the Martinez grant at the Rio Lucero, and the northeast corner approximately at its source. The map showed Bear Lake to be within the boundary of the Martinez grant. In 1950, the United States acquired what was known as the Leroux grant to add to Carson National Forest. The Leroux grant is north of and adjacent to the Martinez grant. In the 1960's the Forest Service cleared a pack road to Bear Lake, and built an out house there. These actions led plaintiff to request the Department of the Interior to ascertain the precise location of the eastern boundary. Bureau of Indian Affairs investigators searched the area in September, 1974, but could find no markers along the northernmost portion of the Rio Lucero. They concluded that it was impossible to reconcile the courses and distances of Walker's survey in that area with the natural boundary, the Rio Lucero "to its source."

On September 10, 1976, the Solicitor for the Department of the Interior concluded that Walker had misplaced the eastern boundary of the Martinez grant, and that the 1945 Geological Survey map was more accurate. The Solicitor went on to suggest that the erroneous Walker courses and distances be corrected. Consequently, on April 11, 1977, Secretary Andrus cancelled the erroneous measurements and ordered a new survey to follow the Rio Lucero from "Station 80 [the point at which Walker's measurements deviated from the river] to its source on the ridgeline to the north."

Secretary Bergland then requested that the Department of Justice review the authority of Secretary Andrus to issue the order. Both the Departments of the Interior and Agriculture, as well as counsel for plaintiff here, submitted their views to the Attorney General. In October, 1977, the Department of the Interior commenced a new survey, which was completed by June 27, 1978. That survey indicates that Bear Lake and approximately 300 acres of land west of the Rio Lucero are part of the lands held in trust for plaintiff. On October 18, 1978, the Attorney General wrote to Secretary Bergland giving his opinion in this matter. He stated that the relevant question was the intent of the Department of the Interior in acquiring the land for Taos Pueblo in 1939, and he concluded that the Department of the Interior had intended only to acquire the land bounded by the erroneous Walker survey line. His conclusion was based on two principal considerations. First, the condemnation judgment referred to and had attached the Walker plat, which put the Bear Lake region outside of Tract C. Second, the judgment's description of Tract A stated that the line of taking followed another river, which was described as the boundary of the grant "and of this tract," but the description of Tract C omitted the language "and of this tract." Subsequently, plaintiff brought this action.

*MERITS*

I. *Jurisdiction.*

Defendants have moved to dismiss plaintiff's complaint, raising several purported obstacles to the prosecution of this action. Defendants first argue that this Court has no jurisdiction to review the opinion function of the Attorney General, and that any such review would clearly be precluded by precedent.[2] The gravamen of this action, however, is not a challenge to the authority of the Attorney General to issue the opinion he did,[3] but rather is a

---

2. 28 U.S.C. § 512 (1976) provides: "The head of an executive department may require the opinion of the Attorney General on questions of law arising in the administration of his department." Defendants allege that in no case has a court held that an opinion issued under this statute exceeded the authority of the Attorney General.

3. Plaintiff does argue that defendant Bell exceeded his authority under 28 U.S.C. § 512 (1976) in that he purported to overrule the decision of another cabinet officer in a matter entrusted to that officer's administrative discretion, *see S & E Contractors v. United States,* 406 U.S. 1, 13, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1973); 9 Op.Atty.Gen. 32, 36 (1857), and in that his opinion was based on his assessment

request seeking this Court's judicial interpretation of the same matter presented to the Attorney General. This Court is not bound by an opinion of the Attorney General. In *Perkins v. Elg,* 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320 (1939), the Supreme Court was faced with a situation very similar to the circumstances of the present case. Mrs. Elg, born of Swedish parents in the United States, was residing in Sweden when she reached the age of majority and decided to elect United States citizenship. *Id.* at 327, 59 S.Ct. 884. The Department of State issued her a passport in 1939. *Id.* Sometime after that, however, the Department changed its policy, and Mrs. Elg was notified that she was an illegal alien in April, 1935. *Id.* at 328, 59 S.Ct. 884. At the time departmental policy was changed, it apparently conflicted with an opinion of the Solicitor of the Department of Labor, and the Attorney General was therefore asked to give his opinion. *Id.* at 347, 59 S.Ct. 884. The Attorney General resolved the conflict in favor of the Department of State's position. *Id.* at 348, 59 S.Ct. 884. Notwithstanding the opinion of the Attorney General approving the Department of State's policy, however, the Supreme Court reached the opposite result with respect to Mrs. Elg, stating that "the conclusions of that opinion are not adequately supported and are opposed to the established principles which should govern the disposition of this case." *Id.* at 349, 59 S.Ct. at 896 (footnote omitted). *Cf. McElroy v. Guagliardo,* 361 U.S. 281, 285–86, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960); *United States v. Dietrich,* 126 F. 671, 675–76 (8th Cir. 1904). Therefore, the Court finds nothing to preclude its review of the law and facts considered by the Attorney General.

█ Defendants also argue that this action is barred by sovereign immunity. Plaintiff predicates jurisdiction on 28 U.S.C. § 1362, which provides that federal district courts have original jurisdiction over all civil actions brought by any Indian tribe arising "under the Constitution, laws, or treaties of the United States." *See Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 667, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974). Defendants point out that this section has consistently been interpreted as not being a waiver of sovereign immunity. *E. g., Standing Rock Sioux Tribe v. Dorgan,* 505 F.2d 1135 (8th Cir. 1970); *Scholder v. United States,* 428 F.2d 1123 (9th Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970).

The cases cited by defendants, however, involved suits for money damages, and not for injunctive relief. For example, *Dorgan, supra,* involved recovery of state sales taxes, 505 F.2d at 1136, and *Scholder, supra,* involved expenditures of appropriated funds, 428 F.2d at 1125. "It is a well-recognized principle that the doctrine of sovereign immunity bars suits against government agencies or officials for monetary damages, but does not bar suits for injunctive or declaratory relief." *AFGE v. Callaway,* 398 F.Supp. 176, 191 (N.D.Ala.1975). *See Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Moreover, the Administrative Procedure Act (APA) provides that:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or the United States is an indispensable party. . . .

5 U.S.C. § 702 (1976). The underlying claim in this case rests on relief from adverse agency or government action. Defendant Andrus corrected the boundary line between two parcels of public land, which correction was suspended by the opinion of the Attorney General. Plaintiff challenges that legal interpretation of the Attorney General. This is a classic case seeking review of administrative action, and sover-

---

of the "intent" of the Department of the Interior at the time of the taking in 1941 which is a question of fact beyond the Attorney General's opinion authority. 21 Op.Atty.Gen. 129 (1895);

7 Op.Atty.Gen. 491 (1855). The Court does not pass on these contentions, in view of its disposition of the matter at hand.

eign immunity is thus no bar to the action. *See also Perkins v. Elg, supra.* Cases cited by defendants for the proposition that actions which affect government ownership of land are barred by sovereign immunity are inapposite. *See, e. g., Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Grainger v. United States,* 197 Ct.Cl. 1018 (1972). The relief requested in this case affects no ownership interest; it would merely adjust the boundaries between two parcels of government-owned land, one of which is held for the benefit of the Taos Pueblo.

■ Similarly, defendants' related argument that this action is barred by the APA provision which precludes relief "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought . . .," 5 U.S.C. § 706 (1976), is misplaced. Defendants maintain that this case is covered by 28 U.S.C. § 2409a (1976). Section 2409a waives sovereign immunity in quiet title actions against the United States, but specifically excludes quiet title actions respecting Indian lands. Therefore, defendants argue, the relief sought is expressly forbidden. This action, as suggested above, however, is not a quiet title action; title to both parcels of land involved rests with the United States, and has since the lands were acquired from private parties several decades ago. This is an action seeking review of administrative action, and therefore defendants' reliance on section 2409a is erroneous. Because this is not an action to quiet title, furthermore, venue is proper in the District of Columbia, notwithstanding defendants' arguments to the contrary, *cf.* 28 U.S.C. § 1402(d) (1976), and the limitation period of section 2409a is likewise no bar.

### II. *Justiciability.*

■ At oral argument, defendants contended that this case was nonjusticiable be-

cause it arises from an interagency dispute which has been resolved by the opinion of the Attorney General.[4] Defendants argue that no rights were created by defendant Andrus' order cancelling the erroneous Walker survey and ordering a corrected survey of the disputed area. The Pueblo Lands Act of 1924, 43 Stat. 636 (1924).[5], however, established that certain appropriated funds were to be used for the purchase of lands benefitting the Pueblo Indians. *Id.* § 19. Pursuant to such authorization, in 1941 the Department of the Interior did acquire the Martinez grant for Taos Pueblo. At that time, there was no reason to suspect that the northeastern boundary of the land acquired for the Pueblo was incorrect. When the Pueblo of Taos discovered in the 1960's that the Forest Service was taking action inconsistent with the actual boundary of the Martinez grant, it promptly made its objections known, and sought administrative relief. Defendant Andrus' order clarifying the boundary in the Pueblo's favor, by defendant's own affidavit, was "superseded" by the opinion of the Attorney General. Therefore it is clear that important rights of the Pueblo were created by the order of defendant Andrus, the official whose duty it is to determine the boundaries of Indian lands. 25 U.S.C. § 176 (1976). These rights were adversely affected by defendant Andrus' decision to conform to the opinion of the Attorney General. Accordingly, the Court finds that the complaint presents a justiciable case or controversy brought by a party aggrieved by adverse administrative action and governed by judicially discoverable and manageable standards.

### III. *Resolution of Plaintiff's Claim.*

The Attorney General concluded that the 1941 condemnation judgment did not in-

---

4. To this end, defendants submitted the affidavit of Secretary Andrus, stating that he considered the Attorney General's opinion as an official pronouncement superseding his own prior order. The Court notes that this is an entirely appropriate position for the Secretary to take. The Court notes further, however, that the Attorney General's opinion is not the judgment of a court of law and cannot operate to change the result arrived at through considered judicial interpretation.

5. *See also* 48 Stat. 108 (1933).

clude the Bear Lake region, not that Secretary Andrus was without authority to issue a corrected survey of the boundary of Indian trust lands. The Attorney General, and defendants here, place primary reliance on the attachment to the judgment of a plat showing Walker's measurements. *See Iselin v. C. W. Hunter Co.,* 173 F.2d 388, 392 (5th Cir. 1949) ("Ordinarily . . . a general description in a deed gives way to a description by metes and bounds, and the latter gives way to a map that is used by reference to identify the land intended to be conveyed."). *But see United States v. Williams,* 441 F.2d 637, 646 (5th Cir. 1971) ("Of course, when descriptions in deeds and plats conflict, the former control."). All rules of construction, however, are only aids in determining the true intent of the parties. *Iselin, supra,* 173 F.2d at 392. In this case, all of the documents, including the condemnation judgment, use descriptive language as well as reference to maps, that identifies the eastern boundary of the grant as being "the middle of . . . the Rio Lucero." The condemnation judgment in fact refers to the east boundary as a meander line "surveyed by John H. Walker (the true East boundary of said grant being the middle of the stream known as Rio Lucero)." Complaint, Attachment E at 4. The question therefore is whether in light of all the circumstances, the natural boundary should control over the Walker survey line.

 The general rule is that where a surveyor intended to meander the contours of a body of water forming the boundary of a tract of land, the true boundary is the body of water and not the meander lines. *E. g., United States v. Lane,* 260 U.S. 662, 664–67, 43 S.Ct. 236, 67 L.Ed. 448 (1923); *Internal Improvement Fund of State of Florida v. Nowak,* 401 F.2d 708, 716–18 (5th Cir. 1968); *Snake River Ranch v. United States,* 542 F.2d 555, 557 (10th Cir. 1976).

In the present case, the instructions to the contract let to Walker specified that "[t]he east boundary should follow . . . the meanders of the Rio Lucero to its source . . . .," and that Walker should proceed, in surveying the east boundary, "in a northerly direction, following the current of the Rio Lucero to its source, at which point you [Walker] will establish the N.E. corner of said tract . . . ." Complaint, Attachment C at 4. Thus, it seems clear that the natural boundary formed by the river has always been the actual boundary, and not the erroneous line marked by Walker.

 Although courts have held that a sufficiently large departure from the proper location of the meander line may be "gross error" which justifies making the surveyed line the fixed boundary of a tract, *e. g., Walton v. United States,* 415 F.2d 121 (10th Cir. 1969); *see Snake River Ranch, supra* at 557, in each case so holding the dispute involved a private party as well as the United States. In this case, both parcels of land are public property. The Secretary of the Interior has supervisory authority over all public land, 43 U.S.C. § 2 (1976), specific authority to survey Indian lands, 25 U.S.C. § 176 (1976), specific authority to establish the boundaries of national forests, 16 U.S.C. § 488 (1976), and authority to correct erroneous land surveys, 43 U.S.C. § 772 (1976). These statutory directives clearly confer upon the Secretary authority to correct what might even be characterized as gross errors in boundaries between public lands.[6] Moreover, because the Martinez grant is now land held in trust by the United States for the Taos Pueblo, the terms of the grant or condemnation should be liberally construed in favor of the Indian beneficiaries. *Antoine v. Washington,* 420 U.S. 194, 199–200, 95 S.Ct. 944, 43 L.Ed.2d 129 (1975); *Passamaquoddy Tribe v. Morton,* 388 F.Supp. 649, 660 (D.Me.), aff'd, 528 F.2d 370 (1st Cir. 1975).

---

**6.** A determination of what constitutes "gross error" must turn on the facts of each case. *Internal Improvement Fund of the State of Florida v. Nowak,* 401 F.2d at 718. In this case, the Bear Lake region comprises approximately 300 acres, out of the total of roughly 60,000 acres in the Martinez grant. In the

Court's view, an error of this magnitude does not constitute "gross error." *Cf. Producers Oil Co. v. Hanzen,* 238 U.S. 325, 35 S.Ct. 755, 59 L.Ed. 1330 (1915); *Jeems Bayou Hunting & Fishing Club v. United States,* 260 U.S. 561, 43 S.Ct. 205, 67 L.Ed. 402 (1923).

■ Defendants argue, however, that boundaries of lands recited in a patent, even if incorrect, are conclusive upon the United States and the patentees and their successors. *See Dominguez De Guyer v. Banning,* 167 U.S. 723, 17 S.Ct. 937, 42 L.Ed. 340 (1897); *Grainger v. United States,* 197 Ct.Cl. 1018 (1972). Defendants maintain that this result obtains because patents confirming Spanish land grants were intended to quiet title to the land and thus surveys were required and considered controlling over "vague" descriptions referring to natural objects. *See Dominguez De Guyer v. Banning, supra,* 167 U.S. at 743, 17 S.Ct. 937. The cases relied on by defendants involve the reliance of private parties on the erroneous measurements and the inequity of adjusting boundaries in the face of such reliance. In the present case, although at one time private parties owned both parcels of land, the government has administered the parcels for several decades. The erroneous survey line was not discovered until several years ago. There has been absolutely no reliance on the erroneous Walker line by any private party, and in fact, Taos Pueblo has relied on the natural boundary of the Rio Lucero. Accordingly, the Court concludes that the plat depicting the line surveyed by Walker as the northeast boundary of Tract C of the Martinez grant is not binding on the Court or on any of the parties to this litigation.

■ After reviewing the relevant legal principles set forth above, the facts surrounding the condemnation of Tract C by the Department of the Interior in 1941, and the relevant documents describing the Martinez grant, the Court concludes that the opinion of the Attorney General was in error. His reliance on attachment of the Walker plat to the condemnation decree is unconvincing in view of the great weight of the evidence indicating the true east boundary of the Martinez grant, and Tract C thereof. His further analysis of the language of the judgment is highly technical and equally unpersuasive.[7] When the United States undertakes to acquire land as compensation to Indian tribes for other lands lost, its duty is to settle disputes and questions regarding that land with fairness and justice. *Antoine v. Washington,* 420 U.S. 194, 95 S.Ct. 944, 43 L.Ed.2d 129 (1975); *Akins v. Saxbe,* 380 F.Supp. 1210 (D.Me.1974). There was in this case no indication that the northeastern boundary of the land acquired for the Pueblo was incorrectly surveyed. No private parties have ever relied on the erroneous boundary. For all of these reasons, the Court declares the corrected survey conducted by the Department of the Interior to represent the actual boundary of the lands known as the Martinez grant and held in trust by the United States for Pueblo of Taos.

### IV. *The Relief Requested.*

■ Plaintiff requests among other things that this Court order defendant Andrus to issue the June 27, 1978 survey. Plaintiff, however, has not alleged 28 U.S.C. § 1361 as a basis for jurisdiction in this matter. Section 1361 provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any public agency thereof to perform a duty owed to the plaintiff." Plaintiff clearly seeks relief in the nature of mandamus with regard to the defendant Andrus. The Court finds that an order of the type requested by plaintiff would not be appropriate at this time, inasmuch as the Secretary's decision to issue a corrected survey is a decision within his administrative

---

7. Defendants' counsel suggested at oral argument that because the adjacent Forest Service lands have been designated as the Wheeler Peak Wilderness under the Wilderness Act, 16 U.S.C. § 1131 *et seq.* (1976); Pub.L. 94–268 (April 16, 1976), defendant Andrus' order correcting the boundary, and allegedly taking land from the wilderness area, could be effectuated only by congressional enactment. *See* Complaint, Attachments H, J, M. Defendant Andrus' order, however, does not "add" or "subtract" any lands from either government-owned parcel; it simply establishes conclusively what has always been the actual boundary. Consequently, the Bear Lake region has never validly been within the adjacent wilderness area. 42 Op.Atty.Gen. 441, 452–53 (1972).

discretion, and the record before the Court does not permit a determination whether that discretion has been abused. In accordance with its previously expressed conclusions, however, the Court will grant the declaratory relief requested by plaintiff and to ensure its effectiveness will enjoin defendants Bergland and Bell from taking actions inconsistent with the judgment of this Court.