Ronald F. KOCH and Janice
L. Koch, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 92–B–2081.

United States District Court,
D. Colorado.

March 4, 1994.

See also 822 F.Supp. 1517.

Jon F. Sands, Bostrom & Sands, P.C.,
Denver, CO, for plaintiffs.

Paul Johns, Asst. U.S. Atty., Denver, CO,
for defendant.

## ORDER

BABCOCK, District Judge.

The plaintiffs filed this action to quiet title to land near Aspen, Colorado. Both parties move for summary judgment. The ultimate issue in this case is the ownership of an 11 acre parcel of land near Aspen, Colorado described as lot 9, section 6, T. 9 S., R. 85 W., 6th p.m. (lot 9). For the reasons set forth below, I conclude that the United States has always owned lot 9 and it has never been conveyed from Federal ownership. Thus, I will grant the government's motion for summary judgment.

### I.

Plaintiffs received a Warranty Deed to certain real property located in Pitkin County, Colorado, and claim that they are thereby record, fee owners of the property. On July 28, 1992, the United States, Department of Interior, Bureau of Land Management, advised plaintiffs that the land allegedly owned of record by plaintiffs includes a certain Lot 9, Section 6, Township 9 South, Range 85 West, which had never been patented into private ownership and is therefore public land.

On October 20, 1992, plaintiffs commenced this action to quiet title to lot 9, and joined the United States as a defendant by virtue of any interest it may claim by and through the United States Department of the Interior, Bureau of Land Management. Both parties move for summary judgment in their favor.

I have jurisdiction over this action pursuant to Title 28 U.S.C. § 2409a (Supp.1993).

## II.

The parties stipulate to the following facts:

1. B.K. Kimberly performed a survey of T. 9 S., R. 85 W., 6th p.m., between January 10 and 18, 1882 (Kimberly survey).

2. Kimberly made field notes of the Kimberly survey of T. 9 S., R. 85 W., 6th p.m., and filed them with the Surveyor General of Colorado.

3. Kimberly filed his plat of survey of T. 9 S., R. 85 W., 6th p.m., based on his field survey on January 10–18, 1882, with the Surveyor General of Colorado on June 19, 1882.

4. The map and field notes of the Kimberly survey of T. 9 S., R. 85 W., 6th p.m., were approved by the Surveyor General of Colorado on June 19, 1882.

5. The Kimberly survey of T. 9 S., R. 85 W., 6th p.m., does not depict a lot 9 in section 6.

6. On August 13, 1885, a Receiver's Receipt was issued to Arthur B. Foster for property described pursuant to the Kimberly survey as follows:

North half of South East Quarter & East half of Southwest Quarter of Section No. Six in Township No. 9 South of Range No. 85 West of the 6th Principal Meridian

7. The Receiver's Receipt issued to Arthur B. Foster was recorded on November 14, 1885, in the books and records of Pitkin County, Colorado.

8. On December 28, 1885, Arthur B. Foster conveyed by quit claim deed to M.H. McLachlin an undivided one half (½) interest to his property, which included the land described as N½SE¼, E½SW¼, section 6, T. 9 S., R. 85 W., 6th p.m.

9. The Surveyor General, by decision of September 18, 1886, permanently suspended The Kimberly survey.

10. On November 12, 1887, the Surveyor General for Colorado ordered U.S. Deputy Surveyor Leonard Cutshaw to conduct a new survey of T. 9 S., R. 85 W., 6th p.m..

11. Cutshaw performed his survey of this area on November, 19–28, 1887 (Cutshaw survey). Cutshaw filed notes of the Cutshaw survey.

12. Cutshaw filed his plat of survey and field notes with the Surveyor General of Colorado, who approved them on November 8, 1888. The Cutshaw survey does not depict a Lot 9 in section 6, T. 9 S., R. 85 W., 6th p.m..

13. On March 22, 1989, M.H. McLachlin conveyed by warranty deed his undivided one half (½) interest in the N½SE¼, E½SW¼, section 6, T. 9 S., R. 85 W., 6th p.m., to Sarah F. Ashby.

14. On June 25, 1889, Thomas Withers began his metes and bounds survey of the private claims in T. 9 S., R. 85 W., 6th p.m. (Withers Survey), which survey was tied into the Cutshaw survey of this area. Among the private claims being resurveyed was that of Arthur B. Foster. Withers completed his metes and bound survey of private claims in this township on September 21, 1889. Withers filed his survey of private claims in this township on November 15, 1889 with the Colorado Surveyor General.

15. The General Land Office, the predecessor agency of the Bureau of Land Management issued, to Arthur B. Foster, Cash Entry Certificate No. 57, which showed receipt of payment for 160 acres of land described as: N½SE¼ & E½SW¼, sec. 6, T. 9 S., R. 85 W., 6th p.m. An alternative description also appears on the face of Cash Entry Certificate No. 57. That alternative description is written as follows:

| Lot 4 | sec | | 5 |
|-------|-----|---|---|
| " | 12 & 13 & 15 | sec. | 6 |
| " | 3 & 4 | " | 7 |

The Cash Entry Certificate was not recorded.

16. On July 1, 1889, the General Land Office, the predecessor of the Bureau of Land Management, issued a patent to Arthur B. Foster for Cash Entry Certificate No. 57. The Patent showed receipt of payment for 160 acres of land described as:

N½SE¼ & E½SW¼, Sec. 6, T. 9 S., R. 85 W., 6th P.M.

17. Arthur B. Foster entered and obtained title to 160 acres of land under the laws of the United States.

18. Withers' 1889 survey of the private claims in T. 9 S., R. 85 W., 6th p.m. created lot 9 in section 6.

19. In 1891 Edward Snell conducted a resurvey of portions of the private claims in T. 9 S., R. 85 W., 6th p.m. (Snell survey) in order to correct some minor errors in the Withers survey. Snell made field notes of the Snell survey.

20. The plat of the Snell survey was approved by the Surveyor General of Colorado on December 22, 1891.

21. On February 12, 1898, Arthur B. Foster conveyed, among other properties, his remaining undivided ½ interest in his original homestead to Jeremie Gerbaz.

22. On March 1, 1917, James N. Ashby and Sarah T. Ashby conveyed their undivided ½ interest in the Arthur B. Foster homestead and other property to Jeremie J. Gerbaz.

23. The 1898 Foster conveyance and the 1917 Ashby conveyance reunified title to Arthur B. Foster's homestead in Jeremie J. Gerbaz.

24. Alonzo H. Adams, a Government surveyor, surveyed T. 9 S., R. 85 W., 6th p.m. in 1917 (Adams survey). The Adams survey was platted and approved by the Surveyor General of Colorado.

25. On April 20, 1943, J.J. Gerbaz, the same person as Jeremie J. Gerbaz, conveyed by quit claim deed, all of his property in section 6, T. 9 S., R. 85 W., 6th p.m., to J.J. Gerbaz and Mary C. Gerbaz in joint tenancy with the right of survivorship.

26. The official plats and historical indexes of the United States, depicting what the United States contends it owns as public lands in section 6, T. 9 S., R. 85 W., 6th p.m., are marked as Exhibit 2.

27. J.J. Gerbaz died on November 11, 1947, and all of his property held by his widow, Mary Gerbaz, passed to her as survivor.

28. On September 8, 1948, Mary Gerbaz conveyed a ¼ undivided interest in her land to H.F. and Eva Gerbaz.

29. On September 9, 1948, Mary Gerbaz conveyed her remaining property interests in Pitkin County, particularly all of her right, title, and interest in section 6, T. 9 S., R. 85 W., 6th p.m., to other members of the Gerbaz family.

30. The members of the Gerbaz family who had acquired the former homestead property of Arthur B. Foster, in section 6, T. 9 S., R. 85 W., 6th p.m., purported to convey all right, title, and interest in section 6, including lot 9, to the Gerbaz Corporation by warranty deed dated May 1, 1970.

31. On December 21, 1972, a State District Court in Pitkin County purported to quiet title lot 9, Section 6, T. 9, in the Gerbaz Corporation. The United States was neither served nor made a party to this action.

32. On September 5, 1979, the corporate name of the Gerbaz Corporation was changed to Aspen Village, Inc., and duly approved by the Colorado Secretary of State.

33. A plat of the property owned by Aspen Village Inc., is T. 9 S., R. 85 W., 6th p.m., Pitkin County, dated July 19, 1984, was recorded. The land comprising lot 9 is purportedly included in this plat of ownership.

34. On July 21, 1988, Aspen Village, Inc., purported to convey, by warranty deed, to the plaintiffs in this action, Ronald F. Koch and Janice L. Koch, Lots 1, 2, 3, 4, 5, and 6, and Parcels A, B, C, D, E, and F, pursuant to a plat dated July 19, 1984. The land comprising Lot 9 was purportedly included within this conveyance.

## III.

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Affidavits and evidence offered by a nonmovant must create a genuine issue for trial; viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be "merely colorable" or anything short of "significantly probative." *Hall v.*

*Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Id.; see also Anderson,* 477 U.S. at 248–52, 106 S.Ct. at 2511.

### IV.

■ The government first argues that this action should be dismissed pursuant to The Quiet Title Act, 28 U.S.C.A. § 2409a, for lack of subject matter jurisdiction. The Quiet Title Act was enacted to create a federal forum for the resolution of title disputes between private litigants and the United States. *Kinscherff v. U.S.,* 586 F.2d 159, 160 (10th Cir.1978). Section 2409a(g) provides as follows:

> Any civil action under this section, except for an action brought by a state, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

The government argues that plaintiffs had both actual and constructive knowledge of the government's claim to this land for more than 12 years before they filed this action. The government contends that it is clear that the plaintiffs' predecessor in interest, Arthur B. Foster, knew from his discussions with surveyors, Thomas Withers in 1891 and Edward S. Snell in 1891, that he (Foster) did not own lot 9. The government further contends that Foster's knowledge is confirmed by the actions of his successors in interest who, when they conveyed the same land by lot numbers in 1943 and 1948, did not include lot 9. Plaintiffs argue that their claim commenced to accrue on July 28, 1992, the date the government advised them it was claiming lot 9.

I conclude that the continued use of the property description in aliquot parts pursuant to the Kimberly survey in the deeds of plaintiffs' predecessors, even after the suspension of the Kimberly survey, arguably raises an issue of fact as to whether plaintiffs' predecessors knew or should have known that lot 9 was claimed by the United States. I decline to dismiss this action pursuant to § 2409a.

### V.

■ The first person plaintiffs list in their chain of title is Arthur B. Foster. Foster entered his land in 1885 based on the 1882 Kimberly survey. On August 13, 1885, Foster was issued a Receiver's Receipt for his property which was recorded on November 14, 1885 in the books and records of Pitkin County, Colorado. The parties stipulate to the fact that the description of Foster's land contained in the Receiver's Receipt is described pursuant to the Kimberly survey as follows:

> North half of the South East Quarter & East half of Southwest Quarter of Section No. Six in Township No. 9 South of Range 85 West of the 6th Principal Meridian.

Foster later received a patent for this property, which was recorded on July 1, 1889. The patent contains the same description of the property as that contained in the Receiver's Receipt and both documents indicate that Foster obtained 160 acres.

■ The Kimberly survey was permanently suspended due to gross inaccuracy on September 18, 1886. After the suspension of the Kimberly survey, the United States ordered a new and independent survey to replace it entirely. This resurvey was done by Leonard Cutshaw in 1887, and was approved on November 8, 1988. The United States has the power to conduct resurveys of public lands at any time it is necessary, even if this also involves the resurvey of contiguous private lands. The only limit on this power is that the government must respect valid existing rights. *See Lane v. Darlington,* 249 U.S. 331, 333, 39 S.Ct. 299, 63 L.Ed. 629 (1919). The requirement of protecting valid existing rights was codified by Congress in 1909 and now appears at 43 U.S.C.A. § 772 (1986). Here, Foster's property rights were unaffected by the resurveys.

Cutshaw did not create the lot numbers at issue in the present case—that was left for subsequent dependent surveys. The Cutshaw survey did create entirely new section lines. Given that Cutshaw created new section lines for section 6, it can be deduced that if the boundary lines of Foster's property are to remain unchanged on the ground, it can no longer be described as the "north half of the south east quarter and the east half of the southwest quarter of section 6," when referring to the Cutshaw survey. Thus, I find that the description of Foster's property contained in the patent is described with reference to the Kimberly survey, even though that survey had been suspended at the time the patent was issued in 1889. The plaintiffs acknowledge that the property described in the Receiver's Receipt pursuant to the Kimberly survey is the same property as was later described in the patent. (Plaintiff's Mot. for S.J. at 8.) As indicated, the parties stipulate that the description in the Receiver's Receipt is described pursuant to the Kimberly Survey.

Thomas Withers did a dependent resurvey of the area at issue in June 1889 in order to recognize the valid existing claims of those who had settled on land and made entries pursuant to the suspended Kimberly survey. Withers' dependent resurvey was done with reference to the 1887 Cutshaw survey and described the valid existing claims by lot numbers.

Withers surveyed Fosters' claim, described it by lot numbers, and also created lot 9. I agree with the government that Withers' survey of Foster's claim fully recognized and preserved Foster's claim as to exact location on the ground, size, shape, and total acreage. Foster's property under the Withers survey consisted of Lot 4, section 5; lots 12, 13, and 15, section 6, and lots 3 and 4, section 7, T. 9 S., R. 85 W., 6th p.m. The total acreage of these lots adds to 160. According to the Withers' survey, at no time was the land in lot 9 ever a part of Foster's claim. The addition of lot 9 to Foster's lots under the Withers survey would bring the total acreage to 171. The facts are undisputed that Foster acquired only 160 acres pursuant to his patent. Furthermore, Withers field notes indicate that he discussed his resurvey with the private claimants in this area, including Foster, and that all parties were in agreement.

In 1891 Edward Snell did a resurvey of the private claims in T. 9 S., R. 85 W., 6th p.m. in order to correct some minor errors in Withers' 1889 survey. Lot 9 remained unchanged. Snell's field notes also indicate that he discussed his survey with Foster and that all parties were in agreement that the claims were accurately reflected.

Plaintiffs contend that lot 9 has a clear and unassailable chain of title traceable to the original grant made to Arthur B. Foster. I disagree. As I indicated above, Foster's original grant was described in aliquot parts with reference to the Kimberly survey. Kimberly's 1882 survey did not create lot 9, as there is no lot 9 in that survey. More importantly, if Kimberly had surveyed the land in lot 9, on his 1882 survey, lot 9 would be physically located in the NE¼ of section 6 and the southern boundary of lot 9 would be part of the northern boundary of Foster's homestead entry. At no time did Foster claim, intend to claim, or purport to claim the land which is physically located in lot 9. Plaintiffs attempt to trace their chain of title to lot 9 is ultimately premised on the contention that Foster acquired lot 9. Because I conclude Foster never claimed lot 9, plaintiffs attempt to trace their title to Foster is futile.

Plaintiffs chain of title is set forth in the stipulated facts. When plaintiffs' predecessors in interest conveyed their land, they sometimes used the aliquot description from the suspended 1882 survey, they sometimes used lot numbers from the 1889 survey, and they sometimes used both legal descriptions. The first conveyance by plaintiffs' predecessors using lot numbers occurred in 1917, when Foster conveyed lots 5 and 16 of section 6, T. 9 S., R. 85 W., 6th p.m., by warranty deed to Jeremie Gerbaz. This is evidence that both Foster and Jeremie Gerbaz were aware of the Cutshaw and Withers surveys as early as 1917.

In 1943, when Jeremie Gerbaz conveyed all of his interest in section 6, T. 9 S., R. 85 W., 6th p.m., by quit claim deed to himself and his wife Mary C. Gerbaz, he did so using both aliquot and lot descriptions and, signifi-

cantly, did not include lot 9 in the description by lot numbers. When Mary Gerbaz conveyed the same property after the death of Jeremie Gerbaz, she used the lot numbers and, again, did not include lot 9. This is evidence that plaintiffs' predecessors in interest realized in 1943 and 1948 that they did not own lot 9.

The government attributes the present conflict over lot 9 to a private survey done in 1970 by the plaintiffs' predecessors in interest. The government alleges that the surveyor applied the legal description of the land from the Kimberly survey to the existing accepted survey done in 1887 and supplemented in 1889 and 1891. Logically, this is the equivalent of mixing apples and oranges because the two surveys describe different land.

Plaintiffs contend that once conveyed, the description of the property included within a patent is conclusive against the United States and cannot be altered. I agree. However, the description of Foster's property contained in his patent is described with reference to the Kimberly survey, not the Cutshaw/Withers survey. Foster's land did not include lot 9. No attempt is being made to alter Foster's claim.

 Plaintiffs accuse the government of trying to change the boundaries of Foster's 160 acre homestead entry, when in fact, Foster's boundaries on the ground never changed and only the description of the property on paper was changed. Significantly, plaintiffs do not address the discrepancy between the fact that Foster acquired 160 acres and including lot 9 in his claim would increase his acreage to 171 acres. Land grants are construed favorably to the government, nothing passes except what is conveyed in clear language, and if there are doubts, they are resolved in favor of the government. *Watt v. Western Nuclear, Inc.*, 462 U.S. 36, 59, 103 S.Ct. 2218, 2231, 76 L.Ed.2d 400 (1983); *United States v. Union Pacific R. Co.*, 353 U.S. 112, 116, 77 S.Ct. 685, 687, 1 L.Ed.2d 693 (1957); *Walton v. United States*, 415 F.2d 121, 123 (10th Cir. 1969).

The facts clearly show that the United States owns and always has owned lot 9,

section 6, T. 9 S., R. 85 W., 6th p.m., and lot 9 was never in the chain of title to which plaintiffs can lay valid legal claim. Summary judgment in favor of the government is appropriate.

Accordingly, it is ORDERED that summary judgment is GRANTED in favor of the government; this action is DISMISSED, plaintiffs to pay all costs.